

NUMBER 13-10-00468-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JORGE DE LA GARZA, M.D.,                                             Appellant,

v.

GARY E. SCHRUZ,                                                           Appellee.

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Vela
### Memorandum Opinion by Justice Garza

When a medical malpractice plaintiff files an expert report that absolves the

defendant doctor of any liability, is it even a "report" at all? That is the question posed in

the instant appeal, in which appellant Jorge De La Garza, M.D., argues that the trial

court should have dismissed the claims brought against him by appellee Gary E.

Schruz. We dismiss the appeal for want of jurisdiction.

## I. BACKGROUND

On October 30, 2009, Schruz sued Dr. De La Garza and Doctors Hospital at Renaissance ("Doctors Hospital"),[1] alleging medical negligence in connection with the care and treatment provided to Schruz during and after undergoing heart surgery. On February 26, 2010, one day prior to the statutory deadline, Schruz filed a purported medical expert report pursuant to chapter 74 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). The report, authored by Mitchell Brooks, M.D., consists of an initial three-page analysis of Schruz's case as well as a two-page "Addendum," also dated and served on February 26, 2010. The initial analysis states in part:

> The clinical records currently available for review essentially document the admission and treatment of [Schruz] for ischemic heart disease that resulted in the performance of a coronary artery bypass graft x4. . . . Jorge De La Garza, M.D. performed the aforementioned surgery on November 19, 2007. The patient was transferred to the intensive care unit that same day at approximately 12:15 PM. What appears to be at issue in this case is whether or not a standard of care was violated with respect to the development and subsequent treatment of a decubitus ulcer. Based on my review and analysis of the clinical records it would appear that such a standard of care was violated on the part of the attending surgeon, Jorge De La Garza, M.D. in that he failed to address the issue of the stasis ulcer in a timely manner, such that further breakdown resulted in a surgical debridement and additional care to the ulcer site.
>
> . . . .
>
> At this point in time I am unable to identify any documentation that indicates that Dr. De La Garza took any action with respect to actively treating the decubitus ulcer until November 26, 2007. This delay[,] in my opinion[,] probably resulted in the surgical treatment of the decubitus ulcer that subsequently occurred as a result of the failure to address the issue in a timelier manner.

---

[1] Doctors Hospital is not a party to this appeal.

2

. . . .

There is additional information that has currently been made available to me and I am present[ly] aware of, the content of which is not included in this report. This information includes progress notes from multiple physicians during that time frame between November 20, 2007 and November 26, 2007. If I am able to ascertain whether or not Dr. De La Garza addressed the issue of the pressure ulcer then the clinical picture and treatment will become clearer. If the records indicate that the attending physician initiated no treatment then the opinion expressed herein will hold. . . .

The "Addendum," which directly follows the initial analysis and forms pages four and five of Dr. Brooks's report, states in part:

I have now had the opportunity to review additional documents with respect to the above referenced case. These include the "Physician's Order Sheets" during the dates of stay at the [hospital] as well as the Daily Progress Notes that were created by the large number of physicians attending this patient.

It would appear that a triple antibiotic ointment or cream was ordered on November 22, 2007 to be applied twice daily to the lesion. . . . Furthermore, a skin care consultation was ordered on November 24, 2007 and after a review of the wound care consult dated November 26, 2007, it would appear that the patient had an air mattress prior to that date to address the possibility of a sacral decubitus ulcer and furthermore, the record also indicates that there were numerous diaper changes started on or about November 25, 2007, presumably to make sure the skin in the perineal area would not become moist. Whoever performed the wound care consult (I am unable to read the signature) further indicated the need to change the patient's mattress. In summation then, it would appear that the physician component of the care was in all probability not unreasonable with respect to its timing and the actual treatment rendered. . . .

Dr. Brooks goes on to state that it "appear[s] that there may very well have been some significant nursing procedures that were violated with respect to communication and the obtaining of a wound care consultation. . . ." Nevertheless, according to Dr. Brooks, "[f]rom the physician perspective, it would thus appear at this point in time that the sequence of events and the apparent treatment does not appear to be unreasonable or

3

outside the standard of care of the community in which the patient was treated."

On March 12, 2010, Dr. De La Garza moved to dismiss the suit on grounds that Dr. Brooks's report was insufficient. Dr. De La Garza further contended that the report did not actually constitute a "report" under the statutory definition, and that Schruz was therefore not entitled to any extension of time to file an amended report. *See id.* § 74.351(b), (c). Schruz responded by claiming that the report was sufficient or, in the alternative, that the trial court should grant an extension of time to cure any deficiency in the report. After a hearing, the trial court determined on August 3, 2010 that the report was "deficient"—rather than "no report"—and granted Schruz's request for a thirty-day extension of time to file a sufficient report. This interlocutory appeal followed. *See id.* § 51.014(a)(9) (West 2008) (permitting appeal of interlocutory order denying all or part of a motion to dismiss for failure to serve an expert report in a health care liability claim); *Badiga v. Lopez*, 274 S.W.3d 681, 685 (Tex. 2009) ("A provider may pursue an interlocutory appeal of the denial of a motion to dismiss when *no* expert report has been timely served, whether or not the trial court grants an extension of time." (Emphasis added.)); *cf. Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007) (holding that, if a *deficient* report is served and the trial court grants a thirty-day extension, that decision, even if coupled with a denial of a motion to dismiss, is not subject to interlocutory appeal).

## II. DISCUSSION

### A. Standard of Review

We review a trial court's order denying a motion to dismiss for failure to comply with the expert report requirement under an abuse of discretion standard. *NCED*

4

*Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.) (applying abuse of discretion standard to trial court's denial of motion to dismiss); *Kendrick v. Garcia*, 171 S.W.3d 698, 702 (Tex. App.–Eastland 2005, pet. denied) (same); *see Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of discretion standard to trial court's granting of motion to dismiss). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 916 (Tex. App.–Dallas 2007, pet. denied).

## B. Applicable Law

Under chapter 74, a plaintiff asserting a health care liability claim must serve a medical expert report upon each party's attorney no later than the 120th day after the date the original petition was filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The report must

> provide[] a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). Although a report need not marshal all of a claimant's proof, it must include the expert's opinion on each of the elements identified in section 74.351. *Palacios*, 46 S.W.3d at 878.

When a defendant files a motion challenging the adequacy of a report, the trial court will grant the motion only if, after a hearing, it appears that the report does not represent an "objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*). To constitute a "good faith effort," the report must provide enough information to (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see Palacios*, 46 S.W.3d at 879.

If an expert report has been served within the 120-day period but elements of the report are found deficient, the court may grant one thirty-day extension to the claimant in order to cure the deficiency. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). On the other hand, if no expert report at all is filed within the 120-day period, no extension is permitted, and the trial court must dismiss the claim against the defendant and award reasonable attorney's fees. *Id.* § 74.351(b).

## C. Analysis

In the "Addendum" attached to his report, Dr. Brooks stated that "the physician component of the care [given to Schruz] was in all probability not unreasonable" and that "[f]rom the physician perspective, . . . the apparent treatment does not appear to be unreasonable or outside the standard of care of the community in which the patient was treated." Neither party disputes that these statements render the report insufficient to satisfy the requirements of the expert report statute, in part because the report did not "provide a basis for the trial court to conclude that the claims [against Dr. De La Garza] have merit." *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. The sole question for this Court,

6

then, is whether Dr. Brooks's report was so insufficient as to constitute no report—in other words, an "absent report"—such that Schruz would not be entitled to a thirty-day extension of time to cure any deficiencies.

The Texas Supreme Court has not yet squarely addressed this issue. However, several recent cases presented similar fact patterns. In *Ogletree v. Matthews*, the defendant urologist argued that the plaintiff's expert reports were so deficient as to be "nonexistent" because they were authored by nurses and a radiologist. 262 S.W.3d 316, 318 (Tex. 2007). The Court noted that a "deficient" report differs from an "absent" report in one "important respect": when the former is served by a health care liability plaintiff, the trial court retains its discretion to grant a thirty-day extension to cure the report; whereas when the latter is served, no extension is permitted. *Id.* In that case, the Court concluded that the expert reports were "deficient," and not "absent." *Id.* at 321. In a concurring opinion, Justice Willett observed that, in addition to "deficient" and "absent" reports, "there exists a third, albeit rare, category: a document so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one." *Id.* at 323 (Willett, J., concurring). Such a document

> may not purport to be a report at all, and its author may not have intended it as such. For example, it may (by its own terms) be provider correspondence or perhaps "medical or hospital records or other documents" or other health-related paperwork that, while related to the patient's care and condition, neglects altogether to address the rudimentary elements of an expert report; indeed, it may never and nowhere accuse anyone of doing anything wrong. Such information certainly constitutes discoverable and highly relevant information in a lawsuit, but any claimant passing off such material as an expert report, and any court treating it as such, evinces a complete disregard for Chapter 74's unambiguous statutory criteria.

*Id.* (footnotes omitted).

7

Several months after *Ogletree*, in *Lewis v. Funderburk*, 253 S.W.3d 204 (Tex. 2008), the supreme court enjoyed an "actual sighting of this rare bird." *Id.* at 210 (Willett, J., concurring). In *Lewis*, the defendant doctor moved to dismiss the plaintiff's case against him for failure to file an expert report. *Id.* at 206. In response, the plaintiff pointed to a "thank-you-for-your-referral letter" in the medical records. *Id.* The trial court denied the defendant's motion to dismiss and granted the plaintiff a thirty-day extension, during which the plaintiff filed a second report. *Id.* The defendant again moved to dismiss, the trial court again denied the motion, and the defendant appealed. *Id.* at 206-07. The appellate court dismissed the appeal for lack of jurisdiction, but the supreme court reversed, noting that subsection 74.351(c) "defines a timely but deficient report as one that 'has not been served,'" and therefore, an interlocutory appeal was permitted in that case under subsection 74.351(b). *Id.* at 207-08; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (permitting appeal of interlocutory order dismissing case under subsection 74.351(b)); *id.* § 74.351(b) (requiring dismissal when report "has not been served" within 120 days). In another concurring opinion, Justice Willett argued that the defendant in *Lewis* was entitled to appeal the trial court's initial denial of his motion to dismiss for failure to file an expert report, because the initial report was, in effect, no report at all. *Lewis*, 253 S.W.3d at 210 (Willett, J., concurring). "This doctor-signed letter is no more a report than a doctor-signed prescription or Christmas card would be." *Id.* at 211. In contrast to the report at issue in *Ogletree*, the initial report in *Lewis* "totally omits the required statutory elements, . . . makes no colorable attempt to demonstrate liability," and "never once accuse[s] anyone of doing anything wrong." *Id.*

8

at 211-12 (internal quotations omitted). Therefore, according to Justice Willett, the trial court had no choice but to grant the defendant's initial motion to dismiss. *Id.* at 212.

Similarly, in *In re Watkins*, a health care liability plaintiff filed a purported expert report that "was merely a narrative of treatment, and failed to address the standard of care, breach, or causation." 279 S.W.3d 633, 633 (Tex. 2009) (orig. proceeding). After the trial court granted a thirty-day extension, the plaintiff filed a new report, which the defendant did not challenge. *Id.* at 633-34. On appeal and by a petition for writ of mandamus, the defendant sought review of the trial court's granting of the thirty-day extension. *Id.* at 634. In a majority opinion, this Court found that, because the trial court implicitly found the report to be merely deficient—and not so woefully inadequate as to constitute no report at all—it did not abuse its discretion in granting the extension. *Watkins v. Jones*, 192 S.W.3d 672, 675 (Tex. App.–Corpus Christi 2006, no pet.) (combined appeal & orig. proceeding). Without determining whether the report was absent or merely deficient, a majority of the supreme court agreed that mandamus was unwarranted. *In re Watkins*, 279 S.W.3d at 634. The Court reasoned that "[i]f no report was served, an interlocutory appeal was available, so mandamus is unnecessary. If the report was merely deficient, than an interlocutory appeal was prohibited, and granting mandamus to review it would subvert the Legislature's limit on such review." *Id.* (footnotes omitted).

In concurring with the judgment, Justices Johnson and Willett opined that the purported expert report in *Watkins* was not, in fact, an expert report at all, because it "does not purport to have any relationship to a health care liability or malpractice case." *Id.* at 635 (Johnson, J., concurring); *id.* at 637 (Willett, J., concurring) (noting that the

purported expert report "omits all three (four if you count the missing curriculum vitae; five if you count the absence of any expert opinion)" statutory requirements and stating that "[t]his is no more an expert report than my son's tricycle is a Harley"). According to Justices Johnson and Willett, because this case involved an *absent* report rather than a *deficient* report, the defendant had the right to appeal the trial court's interlocutory order denying dismissal. *Id.* at 635-36, 639-40; *see Badiga*, 274 S.W.3d at 685 ("A provider may pursue an interlocutory appeal of the denial of a motion to dismiss when no expert report has been timely served, whether or not the trial court grants an extension of time."). Having found that the defendant had an adequate remedy by appeal, Justices Johnson and Willett concurred in the majority's judgment that mandamus was inappropriate. *In re Watkins*, 279 S.W.3d at 636 (Johnson, J., concurring); *id.* at 639-40 (Willett, J., concurring). In his concurrence in *Watkins*, Justice Willett summed up his views on this issue as previously expressed in *Ogletree* and *Lewis*:

> I concede that courts, this one included, cannot decree with micrometer-like precision when something falls from deficient to so-deficient-it's-absent. Each case has its own distinct facts, but judges are not incapable of applying indistinct lines, or at a minimum prescribing the outer ones. One bright-line marker seems beyond reasonable objection: when a "report" contains none of the statutorily prescribed contents. . . . If a document bears zero resemblance to the statute—containing nothing that makes a report a report—it cannot receive an extension.

*In re Watkins*, 279 S.W.3d at 639.

Despite having reviewed several cases presenting variations on the "no report v. deficient report" theme, a majority of the high Court has not yet defined exactly when a report constitutes no report at all. And, although several courts of appeals have considered whether a document purporting to be an expert report is in fact worthy of the

10

name,[2] no court has yet been asked, as we are here, whether a document disavowing any liability on the part of the defendant is "no report" at all. We conclude that, under the applicable supreme court precedent, such a document must instead be considered "merely deficient," and a claimant filing such a document may be given a thirty-day extension to cure the deficiencies under the statute.

In *Ogletree*, the majority of the supreme court implicitly limited "the universe of possible reports" to "two (and only two) types: absent reports, which have not been filed at all and require dismissal of the case, and deficient reports, which have been timely filed and may receive an extension." 262 S.W.3d at 323 (Willett, J., concurring). Justices Johnson and Willett have argued in concurring opinions that there is in fact a third category of purported reports—those that have been filed but are "so utterly

---

[2] *Compare Bogar v. Esparza*, 257 S.W.3d 354, 364-69, 373 (Tex. App.–Austin 2008, no pet.) (concluding that the purported expert report at issue was no report as to appellant because it failed to identify appellant, failed to describe the applicable standard of care, failed to describe how appellant may have breached the standard of care, and, consequently, failed to implicate any person's conduct), *Rivenes v. Holden*, 257 S.W.3d 332, 338-39 (Tex. App.–Houston [14th Dist.] 2008, pet. denied) (determining that a purported expert report did not implicate appellant's conduct and was not a statutory-compliant expert report as to appellant because it offered no opinions concerning appellant's conduct, it failed to discuss how the care rendered by appellant failed to meet the applicable standard of care, and it failed to set forth how appellant's failure to meet the standard of care caused plaintiff to suffer injury, harm, or damages), *and Apodaca v. Russo*, 228 S.W.3d 252, 255-58 (Tex. App.–Austin 2007, no pet.) (holding that a purported expert report was no report as to appellee because it failed to mention appellee and it failed to discuss how the care rendered by appellee did not meet the applicable standard of care or how appellee's failure caused the patient to suffer injury, harm, or damages) *with Scoresby v. Santillan*, 287 S.W.3d 319 (Tex. App.–Fort Worth 2009, pet. granted) (finding that "this is not an absent report case . . . in which we may entertain an interlocutory appeal from the trial court's denial of a motion to dismiss because no report has been served"), *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 282-83 (Tex. App.–Austin 2007, no pet.) (concluding that a purported expert report, which did not link the doctor's conduct with the expert's conclusions, was nevertheless a "merely deficient" report, in part because of the report's "tenor" and the fact that there was only one physician defendant), *and Cook v. Spears*, 275 S.W.3d 577, 580-82 (Tex. App.–Dallas 2008, no pet.) (finding purported expert reports to be merely deficient, and not absent, in part because "the required elements, while deficient, were not totally absent from the reports such that appellees could not cure the deficiencies if granted an extension").

lacking" as to merit immediate dismissal—but that view has not been endorsed by a majority of the Court.[3]  As our colleagues in Fort Worth stated in 2009:

> At present, neither *Ogletree* nor any other supreme court opinion holds that a timely served expert report containing a narrative that fails to include any expert opinion on the standard of care, breach, or causation is tantamount to no report at all and thus ineligible for any section 74.351(c) extension.  Until a majority of the supreme court so holds, such a determination by this court would necessarily constitute a modification to *Ogletree*'s absent or deficient expert report limitation, which would be improper because we are bound as an intermediate appellate court by supreme court precedent.

*Scoresby v. Santillan*, 287 S.W.3d 319, 324 (Tex. App.–Fort Worth 2009, pet. granted) (citing *City of Mission v. Cantu*, 89 S.W.3d 795, 809 n.21 (Tex. App.–Corpus Christi 2002, no pet.) ("As an intermediate appellate court, we are bound to follow the expression of the law as stated by the Texas Supreme Court and leave changes in the law to that court or the legislature.")).

Here, although Dr. Brooks's purported report undisputedly failed to state that Dr. De La Garza had breached any standard of care, the document was in fact timely served.  Because neither the supreme court nor this Court has recognized the possibility that a timely filed report may be, in effect, no report, we have no choice but to conclude that this is a "deficient report" case, not an "absent report" case.  *See Scoresby*, 287 S.W.3d at 325 (concluding that, regardless of whether the purported expert report was "utterly lacking," it was timely served and so cannot be considered "absent" under *Ogletree*).  Accordingly, the trial court did not abuse its discretion in

---

[3] Arguably, even if the view espoused by Justices Johnson and Willett was controlling, Dr. Brooks's report would still be considered "deficient" and not "absent" or "so-deficient-it's-absent," because the report does contain some of the elements prescribed by section 74.351.  *Cf. In re Watkins*, 279 S.W.3d 633, 639 (Tex. 2009) (orig. proceeding) (Willett, J., concurring) ("If a document bears zero resemblance to the statute—containing nothing that makes a report a report—it cannot receive an extension.").

12

denying Dr. De La Garza's motion to dismiss and granting Schruz a thirty-day extension to file a compliant report.[4]  We overrule Dr. De La Garza's issue.

### III. CONCLUSION

In light of our conclusion that the trial court did not err in finding Dr. Brooks's report to be merely deficient, rather than no report at all, we dismiss the appeal for want of jurisdiction.  *See* TEX. R. APP. P. 43.2(f); *Ogletree*, 262 S.W.3d at 321 (holding that, if a deficient report is served and the trial court grants a thirty-day extension, that decision, even if coupled with a denial of a motion to dismiss, is not subject to interlocutory appeal).

DORI CONTRERAS GARZA
Justice

Dissenting Memorandum Opinion by Justice Rose Vela.

Delivered and filed the
2nd day of June, 2011.

---

[4] The dissent states, without reference to authority, that "if a report that fails to mention the conduct of a physician is no report as to that physician, then a report that absolves the physician of negligent conduct is also 'no report.'"  But, as noted, the Texas Supreme Court has yet to acknowledge the possibility that a report, while not absent, might be so deficient that the trial court loses its discretion to grant a thirty-day extension under subsection 74.351(c).  *See Scoresby*, 287 S.W.3d at 324.  It is not the function of this Court to abrogate or modify established precedent; that function lies solely with the supreme court.  *Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002).  We refuse, as the dissent recommends, to entertain the possibility of a report being "so-deficient-it's-absent" when there is no actual supreme court case law to support that position.