**In re Mary Louise WATKINS, M.D., Relator.**

**No. 06–0653.**

Supreme Court of Texas.

Jan. 23, 2009.

Rehearing Denied May 1, 2009.

Ronald G. Hole, Ida Cecilia Garza, Hole & Alvarez, L.L.P., McAllen, for relator.

David R. Joe, Brewer, Anthony & Middlebrook, P.C., Irving, for real party interest.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice MEDINA, and Justice GREEN joined.

Gary Jones filed this suit against Dr. Mary Louise Watkins, alleging she injured his eye in the course of treating a lesion on his face. Within 120 days of filing, he served what he purported to be an expert report.[1] Dr. Watkins objected that the report was merely a narrative of treatment, and failed to address the standard of care, breach, or causation.[2] Nevertheless, the trial court granted a 30–day extension.[3]

---

1. See Tex. Civ. Prac. & Rem.Code § 74.351(a).

2. See id. § 74.351(r)(6); Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 879 (Tex.2001) (holding report must disclose the treatment challenged and the reasons claims

are meritorious to constitute a good-faith effort).

3. See Tex. Civ. Prac. & Rem.Code § 74.351(c); see also id. § 74.351(l) (providing motion to dismiss should be granted if "the report does not represent an objective good faith effort to

Jones filed a new report, which Dr. Watkins has not challenged.

Dr. Watkins then filed an interlocutory appeal and an original proceeding in the court of appeals asserting the trial court abused its discretion in granting an extension, and seeking an order of dismissal. The court of appeals dismissed the interlocutory appeal for want of jurisdiction and denied mandamus relief.[4] Dr. Watkins seeks review of only the latter ruling, asking that we order the case dismissed.

We hold we cannot. The separate writings join issue again today on the question whether the item served was a deficient report or no report at all. But here it does not matter. If no report was served, interlocutory appeal was available,[5] so mandamus is unnecessary. If the report was merely deficient, then an interlocutory appeal was prohibited,[6] and granting mandamus to review it would subvert the Legislature's limit on such review. Legislative findings balancing the costs and benefits of interlocutory review must work both ways: having treated them with respect when they encourage interlocutory review,[7] we must treat them with the same respect when they discourage it.

Accordingly, the petition for mandamus is denied.[8]

Chief Justice JEFFERSON filed a concurring opinion, in which Justice O'NEILL joined.

Justice JOHNSON filed a concurring opinion.

Justice WILLETT filed a concurring opinion.

comply with the definition of an expert report").

4. 192 S.W.3d 672.

5. *Badiga v. Lopez,* 274 S.W.3d 681, 683 (Tex. 2009).

Chief Justice JEFFERSON, joined by Justice O'NEILL, concurring.

I join the Court's opinion but write separately to elaborate upon the report that was served in this case. The report was written by a physician specializing in treatment of the eyes. He states that he treated Jones for injuries sustained after acetic acid was splashed into Jones's right eye during a procedure at Dr. Watkins's office for a facial lesion. The report notes that Jones suffered an epithelial defect and corneal stromal scar, and it discusses the "high likelihood of permanent scarring" Jones faced. It describes a course of treatment with the eye specialist (including a separate visit to a cornea specialist), and concludes that while Jones's situation was stable, he suffered a corneal scar in the right eye.

Justice JOHNSON, concurring.

I withdraw my concurring opinion delivered January 23, 2009, and substitute the following in its place.

> In regard to a health care liability claim, "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM.CODE § 74.351(r)(6). The definition requires that for a document to qualify as a statutory expert report, it must demonstrate three things: (1)

6. TEX. CIV. PRAC. & REM.CODE § 51.014(a)(9); *see Ogletree v. Matthews,* 262 S.W.3d 316, 321 (Tex.2007).

7. *See In re McAllen Med. Ctr., Inc.,* 275 S.W.3d 458, 464 (Tex.2008).

8. TEX.R.APP. P. 52.8(d).

someone with relevant expertise (" '[e]xpert report' means a written report by an *expert* "), (2) has an opinion ("that provides a fair summary of the *expert's opinions* "), and (3) that the defendant was at fault for failing to meet applicable standards of care and thereby harmed the plaintiff ("regarding *applicable standards of care,* the manner in which the care rendered by the physician or health care provider *failed to meet the standards,* and the *causal relationship* between that failure and the injury, harm, or damages."). *Id.* (emphasis added); *see Rivenes v. Holden,* 257 S.W.3d 332, 334, 337 n. 4, 339 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (holding that a report not mentioning the appellant, appellant's failure to meet the applicable standard of care, or how this failure caused the plaintiff's injuries was not an expert report as to the appellant making it unnecessary to address the question of whether the report was a good faith effort to comply with section 74.351).

In *Ogletree v. Matthews,* 262 S.W.3d 316, 321 (Tex.2007), the Court held that if a *deficient* report was served, an extension order—even when combined with a motion to dismiss—was not subject to interlocutory appeal. In *Ogletree,* the trial court determined that the report was deficient, denied defendant's motion to dismiss, and granted an extension to cure the report. *Id.* at 318. The report was not accompanied by a curriculum vitae and was allegedly deficient because its author was a radiologist and not qualified to render legally valid opinions about the standard of care applicable to the urologist defendant. *Id.* But there, the report demonstrated a physician, albeit one with different medical specialization from the defendant, held and expressed opinions that the defendant violated standards of care and caused damage to the plaintiff. The Court referred to the report as deficient. *Id.* at 321.

The document referred to in this case as an expert report is not a *deficient* statutory expert report; it is not a statutory expert report *at all.* While the document is authored by a physician, it does not show that as of the date of the report the author held any opinion as to (1) applicable standards of care for the treatment in question, (2) the manner in which care rendered by the defendant physician failed to meet the standards, or (3) the causal relationship between that failure and the harm claimed.

The report before us does not purport to have any relationship to a health care liability or malpractice case. As the trial judge noted, the document is no more than a status report. In it, the author gives the history taken from the plaintiff that acetic acid "intended for a facial lesion splashed into his right eye," sets out physical findings from examinations, reports the plaintiff's condition as stable, and gives recommendations for future treatment and a prognosis.

The Court said in *Ogletree* that "[i] f *no* report is served within the 120 day deadline provided by 74.351(a), the Legislature denied trial courts the discretion to deny motions to dismiss or grant extensions, and a trial court's refusal to dismiss may be immediately appealed." 262 S.W.3d at 319–20 (emphasis added); *see* TEX. CIV. PRAC. & REM.CODE § 74.351(b) (stating that a trial court "shall" dismiss a claim when expert reports are not served within 120 days); *id.* § 51.014(a)(9) (authorizing interlocutory appeal of the denial of a motion to dismiss filed under section 74.351(b)). The Court has followed through on our statement in *Ogletree* by holding that when no report is served, but a trial court denies a motion to dismiss and grants an extension to cure, an interlocutory appeal is available to challenge the denial of the motion to dismiss. *Badiga v. Lopez,* 274 S.W.3d 681, 683 (Tex.2009).

The Court is not faced with a *deficient* report as was the case in *Ogletree;* the

Court is faced with *no* statutory-compliant expert report as we were in *Badiga.* When no statutory-compliant expert report is filed, there is an adequate remedy by appeal. *Id.* at 683; *Ogletree,* 262 S.W.3d at 321. Because there was an adequate remedy by appeal, I join the Court's judgment in denying mandamus relief.

Justice WILLETT, concurring.

A few days ago we held in *Badiga v. Lopez* that interlocutory appeal is available if no expert report was served,[1] a holding we echo today: "If no report was served, interlocutory appeal was available, so mandamus is unnecessary."[2] I agree with JUSTICE JOHNSON that since the "report" in this case was "not a statutory expert report *at all,*"[3] Dr. Watkins was entitled to immediately appeal the trial court's refusal to dismiss the lawsuit against her.[4] She did precisely that in the court of appeals, which disclaimed jurisdiction over the interlocutory appeal,[5] but in this Court she seeks only mandamus relief. Given the startling frequency of "no report vs. deficient report" cases, I regret that Dr. Watkins' failure to appeal the court of appeals' erroneous dismissal prevents us from squarely (and finally) deciding whether this is a deficient-report case (where an extension is discretionary) or a no-report case (where dismissal is mandatory). I believe it is the latter.

The issue is at once recurring and elusive. For the third time in barely a year we encounter an issue that we cannot reach: whether any health-related document, no matter how irrelevant its content, suffices to warrant an unreviewable thirty-day extension. The issue arose originally, but only indirectly, in *Ogletree v. Matthews,* when the Court noted in passing that medical-expert reports are either absent or deficient,[6] prompting me to stress in a separate concurrence that "the Court's classification of all purported expert reports as either absent or deficient may prove inapposite in rare cases—where the claimed 'report' is actually no such thing—and inadvertently expand the availability of the thirty-day extension provided by section 74.351(c) beyond what the Legislature intended."[7] Which is to say, "there exists a third, albeit rare, category: a document so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one."[8] So in *Ogletree,* I expressed hope (naively) that "[a] grossly substandard filing pitched as a bona fide report" under section 74.351 would "be a rare bird in Texas legal practice."[9]

A few months later in *Lewis v. Funderburk,* the Court confronted "an actual sighting of this rare bird, a species that in my view merits extinction, not conservation."[10] In that case, the purported report was merely (and irrefutably) a "thank-you-

---

1. 274 S.W.3d 681, 683 (Tex.2009).

2. 279 S.W.3d at 634 (footnote omitted).

3. How else do you describe something that omits all three required statutory elements? Three strikes usually sends you to the dugout, not to first base.

4. 279 S.W.3d at 634 (Johnson, J., concurring).

5. 192 S.W.3d 672, 674 ("We conclude that a petition for writ of mandamus is the appropri-

ate means to address this complaint; therefore, we dismiss the interlocutory appeal ... for want of jurisdiction.").

6. 262 S.W.3d 316, 320 (Tex.2007).

7. *Id.* at 322 (Willett, J., concurring).

8. *Id.* at 323.

9. *Id.* at 324.

10. 253 S.W.3d 204, 209 (Tex.2008) (Willett, J., concurring).

for-your-referral letter" from one doctor to another—a letter that never accused anyone of doing anything wrong.[11] However, the defendant waived the "no report" issue by failing to timely appeal, thus foreclosing a merits-based challenge.[12] Such rare-bird sightings, it turns out, are becoming commonplace.[13]

Unfortunately, as noted above, today's case has a procedural hurdle that prevents us from reaching the marquee "no report vs. deficient report" issue. In the court of appeals, Dr. Watkins filed a "joint petition for writ of mandamus and interlocutory appeal alleging that the trial court abused its discretion when it denied her motion to dismiss."[14] The court of appeals dismissed the interlocutory appeal for want of jurisdiction and considered only the mandamus action, calling it "the appropriate means to address this complaint."[15] As the Court points out, Dr. Watkins seeks review only of the denial of mandamus relief, not the dismissal of her interlocutory appeal.

Accordingly, the only question here is whether we should review the order by mandamus, which, as the Court notes, is unnecessary if no report was served because the statute explicitly authorizes interlocutory appeal in such cases. The most interesting issue, procedurally unreachable, is whether Jones served a defi-cient report or, as I believe, no report at all. The trial court's assessment of Jones's proffered "report" is to the point:

> I don't think it complies with the statute.... I don't feel that it does meet the standard.... It needs to be in compliance with the statute.... [A]ll that [the document] is saying is reciting when [he] went to the doctor, what the doctor did, then [he] got laser treatment, and then [his] vision improved, but, you know, it wasn't back to where it was. It's just a narrative. It's not an expert's report as to the standard of care as required by the statute at all, not even close.

We have held that something cannot constitute "an objective good faith effort"[16] to comply with the statutory definition "if it omits any of the statutory requirements."[17] Here, the "report" omits *all three* (four if you count the missing curriculum vitae;[18] five if you count the absence of any expert *opinion*) and, as JUSTICE JOHNSON puts it, "does not purport to have any relationship to a malpractice case."[19] Surely, a medical-expert report must at some point actually accuse someone of committing malpractice. This is no more an expert report than my son's tricycle is a Harley.

On this point, Jones's briefing is notable, casting his case as so cut-and-dry that the common-law *res ipsa loquitor* doctrine ap-

---

11. *Id.* at 206 (majority opinion).

12. *Id.* at 208.

13. Absent appellate enforcement of chapter 74's mandatory-dismissal provision in no-report cases, such sightings will doubtless proliferate. If trial courts grant extensions even in no-report cases when dismissal is statutorily required, thus lowering the "threshold over which a claimant must proceed to continue a lawsuit," *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex.2005) (per curiam), chapter 74 defendants may soon identify with the seaside residents of Bodega Bay, besieged by avian attacks. THE BIRDS (Universal Pictures 1963).

14. 192 S.W.3d 672, 673.

15. *Id.* at 674.

16. TEX. CIV. PRAC. & REM.CODE § 74.351(*l*).

17. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex.2001).

18. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(a).

19. 279 S.W.3d at 635 (Johnson, J., concurring).

plies, thus relieving him of the duty to serve an expert report under section 74.351. This argument likely explains the skimpiness of Jones's proffered "report," which his own submission to the trial court declared is "provided although not required" because the alleged malpractice "is plainly within the common knowledge of laypersons" and, he continued, "perhaps as simple as a medical negligence case could be." Jones notes that when he submitted the one-page narrative, the law was "rapidly changing, and is in fact still very unsettled on the question of whether a *res ipsa loquitor* medical negligence case requires an expert report." Although we held in *Murphy v. Russell* that the Legislature's expert-report requirement applies to all health care liability claims, however cast,[20] Jones points out that *Murphy* postdated the filing of his "report" by three months. In addition, Jones stresses that a case decided shortly before he submitted his "report" held that *res ipsa loquitor* medical-negligence claims "fall outside the spectrum of cases requiring expert reports."[21] Maybe this is why Jones did not replace or strengthen the submission after Dr. Watkins filed objections, even though thirty-nine days remained of the 120–day window, after which Dr. Watkins filed her motion to dismiss. Jones argues that despite our *Murphy* decision (which was not itself a *res ipsa loquitor* case) there persists a "yet remaining uncertainty of the expert witness requirement in *res ipsa loquitor* medical negligence cases."[22]

Nonetheless, despite the trial court's own "not even close" determination, despite its express finding that the "report" was "just a narrative" and not an expert report, and despite a statute that mandates dismissal when no report has been served, the trial court granted a thirty-day extension. That is, something lacking every statutory element was nonetheless deemed to satisfy the statutory criteria. As we held in *Badiga*, section 51.014(a)(9) authorizes an interlocutory appeal from a dismissal-denial when no report has been filed.[23] The dispositive question is whether a narrative that fails to include any expert opinion on the standard of care, breach, or causation is merely deficient and thus eligible for an unreviewable extension or tantamount to no report at all and thus ineligible for *any* extension. For the reasons stated above, I believe this is a no-report case like *Badiga*, meaning the court of appeals erred in dismissing Dr. Watkins' interlocutory appeal.

Had Dr. Watkins challenged the court of appeals' dismissal of her interlocutory appeal, this case, like *Badiga*, would have presented the issue we expressly reserved in *Ogletree:* whether there can be interlocutory review of a denied dismissal motion when there is no report as opposed to (and note this locution) "a report *that implicated a provider's conduct* but was somehow deficient."[24] Jones's report implicated *nobody's* conduct and, in my view, "is no more a report than a doctor-signed prescription or Christmas card would be."[25]

**20.** 167 S.W.3d 835, 839 (Tex.2005) (per curiam).

**21.** *Wade v. Methodist Hosp.*, No. 01–02–01272–CV, 2004 WL 2749565, at *8 (Tex. App.-Houston [1st Dist.] Dec. 2, 2004, no pet.) (mem.op.).

**22.** Given its disposition, the Court does not address this argument, though as a general rule, *res ipsa loquitor* is inapplicable in medical-malpractice cases. *Palacios*, 46 S.W.3d at 880 (citing the predecessor to section 74.201,

which strictly limits the doctrine "to the limited classes of cases to which it applied as of August 29, 1977").

**23.** *Badiga v. Lopez*, 274 S.W.3d 681, 683 (Tex. 2009).

**24.** *Ogletree v. Matthews*, 262 S.W.3d 316, 320 n. 2 (Tex.2007) (emphasis added).

**25.** *Lewis v. Funderburk*, 253 S.W.3d 204, 211 (Tex.2008) (Willett, J., concurring).

Filing nothing would have been qualitatively no worse. Calling this a report, even a deficient one, is like calling something a Wright Brothers biography that leaves out Wilbur and Orville. I see little meaningful difference between filing nothing and filing something that amounts to nothing; both undermine what the statute underscores: claims lacking timely support must be dismissed.

The statute by its terms denies Jones a post-deadline opportunity to supply the elements mandated by section 74.351(c). Jones had such an opportunity; he had exactly 120 days from the time he filed his lawsuit,[26] a clock he alone controlled. In fact, Jones's opportunity was especially golden, one that few claimants enjoy. Dr. Watkins filed *pre-deadline* objections to the proffered report, giving Jones thirty-nine days to supplement or replace it before the 120–day period expired. He did neither.

If Texas courts adopt a relaxed approach to the mandatory-dismissal statute, rushed claimants' lawyers facing an imminent 120–day expert-report deadline can rifle through the casefile and submit the first provider-generated document they find—or just copy the entire medical file and stamp "report" atop it—confident that if they can coax an extension from the trial court, it will be bulletproof, and they can procure an actual report later. In fact, the court of appeals' decision is already being cited as precedent for the notion that barebones material like this, however devoid of the statutory elements, can avert dismissal.[27] In my view, courts (both trial and appellate) should not absolve the omission of the Legislature's prescribed elements, giving a pass to something that by its own content never purports to be a report, thus letting claimants argue "heads I win" (no interlocutory appeal) and "tails you lose" (no mandamus relief).

I concede that courts, this one included, cannot decree with micrometer-like precision when something falls from deficient to so-deficient-it's-absent. Each case has its own distinct facts, but judges are not incapable of applying indistinct lines, or at minimum prescribing the outer ones. One bright-line marker seems beyond reasonable objection: when a "report" contains none of the statutorily prescribed contents. There must exist an agreed outer fringe, and the superficial document in this case lies beyond it. The Legislature, aiming to weed out unsupported and inadequately investigated claims, enacted a rigid statute: missed deadlines mean dismissed claims. If a document bears zero resemblance to the statute—containing nothing that makes a report a report—it cannot receive an extension.

I regret we are unable (again) to resolve this issue once and for all. It is no small matter to short-circuit the Legislature's deadlines for bringing medical-negligence claims by declaring unreviewable a trial court's decision to judicially amend the statute and excuse any medical-related piece of paper, no matter how untethered to chapter 74's criteria. Courts should not adopt a "no harm, no foul" approach to statutory violations. Denying interlocutory relief in such cases invites additional flouting of the Legislature's rules. I remain where I have been: If a report is missing, not just amiss, courts are remiss if they do not dismiss.[28]

All that said, because I believe Dr. Watkins was entitled to bring an interlocutory

---

26. *See* Tex. Civ. Prac. & Rem.Code § 74.351(a).

27. *In re Padilla*, 242 S.W.3d 549, 552 (Tex. App.-El Paso 2007, orig. proceeding).

28. *Funderburk*, 253 S.W.3d at 210 (Willett, J., concurring).

appeal, I agree with the Court that she cannot seek mandamus relief.