

**NUMBER 13-10-00532-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE L. VILLARREAL, D.D.S., Appellant,

v.

MARIANELA HERNANDEZ, Appellee.

**On appeal from the County Court at Law No. 5
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Garza**

In this interlocutory appeal, appellant Jose L. Villarreal, D.D.S., contends that the trial court erred in denying his motion to dismiss the dental malpractice suit brought by appellee Marianela Hernandez. Dr. Villarreal argues by a single issue that the suit should have been dismissed because Hernandez failed to comply with the medical expert report requirement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West

2011).  We dismiss the appeal for want of jurisdiction.

## I. BACKGROUND

In her original petition filed on February 23, 2010, Hernandez asserted that Dr. Villarreal provided negligent dental care by "[r]epresenting that a Root Canal [was] necessary when it was not" and by "[p]erforming a Root Canal that was not necessary." On April 5, 2010, Hernandez served upon defense counsel two letters authored by Julio C. de la Fuente, D.D.S., purporting to be expert medical reports.  *See id.*  The first letter stated, in its entirety, as follows:

> Mrs. Marianela Hernandez was examined by me on September 17, 2009. At the time of examination, she was found to be missing several molars on upper and lower, [and to] have several amalgam fillings and recurrent caries[1] on premolars.  She also has root canal treatments on #10 and 11 with a post and build up on both and recurrent caries on both.
>
> Tooth #10 (maxillary left lateral) is fractured at the gumline and has no clinical crown remaining.  The tooth has a short root and restoring it in this condition would cause the root to fracture and the tooth to fail.
>
> Tooth #11 (maxillary left canine) has recurrent caries on clinical crown and no visible periapical[2] lesion.
>
> Tooth #11 would need to have a core build up completed to remove any existing caries and a porcelain crown placed to restore tooth.  Tooth #10 would need to be removed and replaced with an implant, and later restored with a porcelain crown.

The second letter was exactly the same as the first, except that it also included the following paragraph:

> Mrs. Hernandez explained that she did not have any root canal treatments on teeth #10 or 11 before she went to see Dr. Villarreal.  She also explained that the root canal was needed on tooth #11 and Dr. Villarreal did it on the wrong tooth and did it on 10.  He later did the root canal on

---

[1] "Caries" is defined as "[t]he localized, gradual destruction of teeth by inorganic acids and bacteria . . . ."  IDA G. DOX, ET AL., ATTORNEY'S ILLUSTRATED MEDICAL DICTIONARY C14 (1997).

[2] "Periapical" is defined as "[a]round a dental root, including the alveolar bone."  *Id.* at P21.

#11. Based on what the patient has explained and the clinical findings, it is my opinion that tooth #10 would not have any problems were it not for the root canal treatment that was mistakenly done on it.

Dr. Villarreal subsequently objected to the purported reports and moved to dismiss the case. Dr. Villarreal specifically argued that Dr. de la Fuente's letters do not actually constitute "reports" at all because they "utterly ignore[d] the statutory requirements of addressing the required standard of care of this Defendant, how the 'expert' is knowledgeable factually in that standard of care, and . . . proximate cause."[3]

The trial court found the reports insufficient, but denied Dr. Villarreal's motion to dismiss and instead granted Hernandez a thirty-day extension of time to cure the reports. *See id.* § 74.351(c). This interlocutory appeal followed. *See id.* § 51.014(a)(9) (West 2008) (permitting appeal of interlocutory order denying all or part of a motion to dismiss for failure to serve an expert report in a health care liability claim); *Badiga v. Lopez*, 274 S.W.3d 681, 685 (Tex. 2009) ("A provider may pursue an interlocutory appeal of the denial of a motion to dismiss when *no* expert report has been timely served, whether or not the trial court grants an extension of time." (Emphasis added.)); *cf. Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007) (holding that, if a *deficient* report is served and the trial court grants a thirty-day extension, that decision, even if coupled with a denial of a motion to dismiss, is not subject to interlocutory appeal).

## II. DISCUSSION

### A. Standard of Review

---

[3] Dr. Villarreal also argued in his motion to dismiss that Dr. de la Fuente's letters did not constitute "reports" because they did not "indicate that [they are] report[s] generated to comply with the statutory requirements of Chapter 74.351" and because they were not accompanied by Dr. de la Fuente's curriculum vitae. However, he does not advance these assertions on appeal.

3

We review a trial court's order denying a motion to dismiss for failure to comply with the expert report requirement under an abuse of discretion standard. *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.); *Kendrick v. Garcia*, 171 S.W.3d 698, 702 (Tex. App.–Eastland 2005, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 916 (Tex. App.–Dallas 2007, pet. denied).

## B.    Applicable Law

Under chapter 74, a plaintiff asserting a health care liability claim must serve a medical expert report upon each party's attorney no later than the 120th day after the date the original petition was filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The report must

> provide[] a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). Although a report need not marshal all of a claimant's proof, it must include the expert's opinion on each of the elements identified in section 74.351. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001).

When a defendant files a motion challenging the adequacy of a report, the trial court will grant the motion only if, after a hearing, it appears that the report does not

4

represent an "objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*). To constitute a "good faith effort," the report must provide enough information to (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see Palacios*, 46 S.W.3d at 879.

If an expert report has been served within the 120-day period but elements of the report are found deficient, the court may grant one thirty-day extension to the claimant in order to cure the deficiency. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). On the other hand, if no expert report at all is filed within the 120-day period, no extension is permitted, and the trial court must dismiss the claim against the defendant and award reasonable attorney's fees. *Id.* § 74.351(b).

**C.    Analysis**

On appeal, Dr. Villarreal argues that Dr. de la Fuente's letters, taken together, constitute an "'absent report' because it wholly fails to address any of the elements required to meet the definition of an 'expert report.'" According to Dr. Villarreal, because "no report" was served, Hernandez was not entitled to a thirty-day extension of time to cure any deficiencies. *See id.* § 74.351(c).

As we recently noted in *De La Garza v. Schruz*, No. 13-10-00468-CV, 2011 Tex. App. LEXIS 4238, at *9 (Tex. App.–Corpus Christi June 2, 2011, no pet. h.) (mem. op.), the Texas Supreme Court has not yet squarely addressed this issue. However, several recent cases presented similar fact patterns:

> In *Ogletree v. Matthews*, the defendant urologist argued that the plaintiff's expert reports were so deficient as to be "nonexistent" because they were

5

authored by nurses and a radiologist. 262 S.W.3d 316, 318 (Tex. 2007). The Court noted that a "deficient" report differs from an "absent" report in one "important respect": when the former is served by a health care liability plaintiff, the trial court retains its discretion to grant a thirty-day extension to cure the report; whereas when the latter is served, no extension is permitted. *Id.* In that case, the Court concluded that the expert reports were "deficient," and not "absent." *Id.* at 321. In a concurring opinion, Justice Willett observed that, in addition to "deficient" and "absent" reports, "there exists a third, albeit rare, category: a document so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one." *Id.* at 323 (Willett, J., concurring). Such a document

> may not purport to be a report at all, and its author may not have intended it as such. For example, it may (by its own terms) be provider correspondence or perhaps "medical or hospital records or other documents" or other health-related paperwork that, while related to the patient's care and condition, neglects altogether to address the rudimentary elements of an expert report; indeed, it may never and nowhere accuse anyone of doing anything wrong. Such information certainly constitutes discoverable and highly relevant information in a lawsuit, but any claimant passing off such material as an expert report, and any court treating it as such, evinces a complete disregard for Chapter 74's unambiguous statutory criteria.

*Id.* (footnotes omitted).

Several months after *Ogletree*, in *Lewis v. Funderburk*, 253 S.W.3d 204 (Tex. 2008), the supreme court enjoyed an "actual sighting of this rare bird." *Id.* at 210 (Willett, J., concurring). In *Lewis*, the defendant doctor moved to dismiss the plaintiff's case against him for failure to file an expert report. *Id.* at 206. In response, the plaintiff pointed to a "thank-you-for-your-referral letter" in the medical records. *Id.* The trial court denied the defendant's motion to dismiss and granted the plaintiff a thirty-day extension, during which the plaintiff filed a second report. *Id.* The defendant again moved to dismiss, the trial court again denied the motion, and the defendant appealed. *Id.* at 206-07. The appellate court dismissed the appeal for lack of jurisdiction, but the supreme court reversed, noting that subsection 74.351(c) "defines a timely but deficient report as one that 'has not been served,'" and therefore, an interlocutory appeal was permitted in that case under subsection 74.351(b). *Id.* at 207-08; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (permitting appeal of interlocutory order dismissing case under subsection 74.351(b)); *id.* § 74.351(b) (requiring dismissal when report "has not been served" within

120 days). In another concurring opinion, Justice Willett argued that the defendant in *Lewis* was entitled to appeal the trial court's initial denial of his motion to dismiss for failure to file an expert report, because the initial report was, in effect, no report at all. *Lewis*, 253 S.W.3d at 210 (Willett, J., concurring). "This doctor-signed letter is no more a report than a doctor-signed prescription or Christmas card would be." *Id.* at 211. In contrast to the report at issue in *Ogletree*, the initial report in *Lewis* "totally omits the required statutory elements, . . . makes no colorable attempt to demonstrate liability," and "never once accuse[s] anyone of doing anything wrong." *Id.* at 211-12 (internal quotations omitted). Therefore, according to Justice Willett, the trial court had no choice but to grant the defendant's initial motion to dismiss. *Id.* at 212.

Similarly, in *In re Watkins*, a health care liability plaintiff filed a purported expert report that "was merely a narrative of treatment, and failed to address the standard of care, breach, or causation." 279 S.W.3d 633, 633 (Tex. 2009) (orig. proceeding). After the trial court granted a thirty-day extension, the plaintiff filed a new report, which the defendant did not challenge. *Id.* at 633-34. On appeal and by a petition for writ of mandamus, the defendant sought review of the trial court's granting of the thirty-day extension. *Id.* at 634. In a majority opinion, this Court found that, because the trial court implicitly found the report to be merely deficient—and not so woefully inadequate as to constitute no report at all—it did not abuse its discretion in granting the extension. *Watkins v. Jones*, 192 S.W.3d 672, 675 (Tex. App.–Corpus Christi 2006, no pet.) (combined appeal & orig. proceeding). Without determining whether the report was absent or merely deficient, a majority of the supreme court agreed that mandamus was unwarranted. *In re Watkins*, 279 S.W.3d at 634. The Court reasoned that "[i]f no report was served, an interlocutory appeal was available, so mandamus is unnecessary. If the report was merely deficient, than an interlocutory appeal was prohibited, and granting mandamus to review it would subvert the Legislature's limit on such review." *Id.* (footnotes omitted).

In concurring with the judgment, Justices Johnson and Willett opined that the purported expert report in *Watkins* was not, in fact, an expert report at all, because it "does not purport to have any relationship to a health care liability or malpractice case." *Id.* at 635 (Johnson, J., concurring); *id.* at 637 (Willett, J., concurring) (noting that the purported expert report "omits all three (four if you count the missing curriculum vitae; five if you count the absence of any expert opinion)" statutory requirements and stating that "[t]his is no more an expert report than my son's tricycle is a Harley"). According to Justices Johnson and Willett, because this case involved an *absent* report rather than a *deficient* report, the defendant had the right to appeal the trial court's interlocutory order denying dismissal. *Id.* at 635-36, 639-40; *see Badiga*, 274 S.W.3d at 685

7

("A provider may pursue an interlocutory appeal of the denial of a motion to dismiss when no expert report has been timely served, whether or not the trial court grants an extension of time."). Having found that the defendant had an adequate remedy by appeal, Justices Johnson and Willett concurred in the majority's judgment that mandamus was inappropriate. *In re Watkins*, 279 S.W.3d at 636 (Johnson, J., concurring); *id.* at 639-40 (Willett, J., concurring). In his concurrence in *Watkins*, Justice Willett summed up his views on this issue as previously expressed in *Ogletree* and *Lewis*:

> I concede that courts, this one included, cannot decree with micrometer-like precision when something falls from deficient to so-deficient-it's-absent. Each case has its own distinct facts, but judges are not incapable of applying indistinct lines, or at a minimum prescribing the outer ones. One bright-line marker seems beyond reasonable objection: when a "report" contains none of the statutorily prescribed contents. . . . If a document bears zero resemblance to the statute—containing nothing that makes a report a report—it cannot receive an extension.

*In re Watkins*, 279 S.W.3d at 639.

> . . . .

In *Ogletree*, the majority of the supreme court implicitly limited "the universe of possible reports" to "two (and only two) types: absent reports, which have not been filed at all and require dismissal of the case, and deficient reports, which have been timely filed and may receive an extension." 262 S.W.3d at 323 (Willett, J., concurring). Justices Johnson and Willett have argued in concurring opinions that there is in fact a third category of purported reports—those that have been filed but are "so utterly lacking" as to merit immediate dismissal—but that view has not been endorsed by a majority of the Court. As our colleagues in Fort Worth stated in 2009:

> At present, neither *Ogletree* nor any other supreme court opinion holds that a timely served expert report containing a narrative that fails to include any expert opinion on the standard of care, breach, or causation is tantamount to no report at all and thus ineligible for any section 74.351(c) extension. Until a majority of the supreme court so holds, such a determination by this court would necessarily constitute a modification to *Ogletree*'s absent or deficient expert report limitation, which would be improper because

8

> we are bound as an intermediate appellate court by supreme court precedent.

> *Scoresby v. Santillan*, 287 S.W.3d 319, 324 (Tex. App.–Fort Worth 2009, pet. granted) (citing *City of Mission v. Cantu*, 89 S.W.3d 795, 809 n.21 (Tex. App.–Corpus Christi 2002, no pet.) ("As an intermediate appellate court, we are bound to follow the expression of the law as stated by the Texas Supreme Court and leave changes in the law to that court or the legislature.")).

*De La Garza*, 2011 Tex. App. LEXIS 4238, at *9-19 (footnote omitted).

In *De La Garza*, the plaintiff's purported expert report actually exonerated the defendant of any wrongdoing. *See id.* at *4. Nevertheless, we found that the purported report was merely "deficient," and not "absent," because, although it "undisputedly failed to state that [the defendant] had breached any standard of care, the document was in fact timely served." *Id.* at *20. "Because neither the supreme court nor this Court has recognized the possibility that a timely filed report may be, in effect, no report," we had "no choice but to conclude that this is a 'deficient report' case, not an 'absent report' case." *Id.*

Though insufficient to satisfy chapter 74, Dr. de la Fuente's second letter is stronger than the report we considered in *De La Garza*. The letter stated that Dr. Villarreal initially performed Hernandez's root canal "on the wrong tooth." Dr. de la Fuente further stated that, in his opinion, "tooth #10 would not have any problems were it not for the root canal treatment that was mistakenly done on it." Although these statements are not explicitly labeled as descriptions of the standard of care, breach, and causation elements, they do clearly suggest that Dr. Villarreal breached the applicable standard of care by performing a root canal on the wrong tooth, and that the tooth would not have had "any problems" but for the erroneous procedure.

9

Even if we were to adopt the position of Justices Johnson and Willett—that a report, though timely filed, may be so woefully inadequate as to be considered "no report"—we would likely conclude that Dr. de la Fuente's second letter was not "so utterly lacking" as to constitute "no report" at all. *Cf. In re Watkins*, 279 S.W.3d at 639 (Willett, J., concurring) (arguing that a purported report is actually "no report" when it "contains none of the statutorily prescribed contents"); *Ogletree*, 262 S.W.3d at 323 (Willett, J., concurring) (arguing that a timely filed report should be considered absent if it "neglects altogether to address the rudimentary elements of an expert report" or "never and nowhere accuse[s] anyone of doing anything wrong"); *Lewis*, 253 S.W.3d at 211-12 (Willett, J., concurring) (urging that a purported report be considered absent when it "totally omits the required statutory elements and makes no colorable attempt to demonstrate liability"). But, as we noted in *De La Garza*, the position articulated by Justices Johnson and Willett has not been endorsed by a majority of the supreme court. In fact, neither the supreme court nor this Court has recognized the possibility that a timely filed report may be, in effect, no report. *See Scoresby*, 287 S.W.3d at 325 (concluding that, regardless of whether the purported expert report was "utterly lacking," it was timely served and so cannot be considered "absent" under *Ogletree*); *see also De La Garza*, 2011 Tex. App. LEXIS 4238, at *20. Accordingly, we have no choice but to conclude that Dr. de la Fuente's second letter is "deficient," not "absent."

The trial court did not abuse its discretion in denying Dr. Villarreal's motion to dismiss and granting Hernandez a thirty-day extension to file a compliant report. We overrule Dr. Villarreal's issue.

## III. CONCLUSION

10

In light of our conclusion that the trial court did not err in finding Dr. de la Fuente's purported report to be merely deficient, rather than no report at all, we dismiss the appeal for want of jurisdiction.  *See* TEX. R. APP. P. 43.2(f); *Ogletree*, 262 S.W.3d at 321 (holding that, if a deficient report is served and the trial court grants a thirty-day extension, that decision, even if coupled with a denial of a motion to dismiss, is not subject to interlocutory appeal).

DORI CONTRERAS GARZA
Justice

Delivered and filed the
9th day of June, 2011.

11