IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
09-0497
════════════
 
Tyler Scoresby, M.D., 
Petitioner,
 
v.
 
Catarino Santillan, individually and as next friend of Samuel Santillan, a minor, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Second District of Texas
════════════════════════════════════════════════════
 
 
Argued November 9, 2010
 
 
            
Justice Johnson, joined by 
Justice Wainwright, 
dissenting.
 
 
            
The Court says that a plaintiff who timely files a defective expert 
report is eligible for an extension of time to cure the report if
[the report] contains a 
statement of opinion by an individual with expertise indicating that the claim 
asserted by the plaintiff against the defendant has merit. An individual’s lack 
of relevant qualifications and an opinion’s inadequacies are deficiencies the 
plaintiff should be given an opportunity to cure if it is possible to do 
so.
 
 ___ S.W.3d ___, 
___. In my view the Court’s standard does not conform to requirements the 
Legislature imposed in authorizing an extension to cure a deficient report. I 
respectfully dissent.
            
A trial court is statutorily authorized to grant an extension to cure 
elements of an expert report that are found deficient, not to cure a report that 
substantively is not a report, nor to cure a report from which elements are 
absent as opposed to deficient:
 
(b) If, as to a defendant physician or health care 
provider, an expert report has not been served within the period specified by 
Subsection (a), the court, on the motion of the affected physician or health 
care provider, shall, subject to Subsection (c), enter an order that:
(1) awards to the affected physician or health care 
provider reasonable attorney’s fees and costs of court incurred by the physician 
or health care provider; and
(2) dismisses the claim with 
respect to the physician or health care provider, with prejudice to the refiling of the claim.
(c) If an expert report has not been served within the 
period specified by Subsection (a) because elements of the report are found 
deficient, the court may grant one 30-day extension to the claimant in order to 
cure the deficiency.
 
Tex. Civ. 
Prac. & Rem. Code § 
74.351(b), (c);[1] see In re Watkins, 279 S.W.3d 633, 
634-35 (Tex. 2009) (Johnson, J., concurring) (“The definition [of expert report] 
requires that for a document to qualify as a statutory expert report, it must 
demonstrate three things: (1) someone with relevant expertise (‘“[e]xpert report” means a written report by an expert’), (2) has 
an opinion (‘that provides a fair summary of the expert’s opinions’), and 
(3) that the defendant was at fault for failing to meet applicable standards of 
care and thereby harmed the plaintiff . . . .”). Absent an expert with relevant 
expertise, I do not see how there can be an expert report under the statute, 
because the foundation of an expert report is the requirement that the report be 
by a qualified expert. “Expert” for purposes of a report 
means:
 
[W]ith respect to a person 
giving opinion testimony regarding whether a physician departed from accepted 
standards of medical care, an expert qualified to testify under the requirements 
of Section 74.401 . . . .
 
Tex. Civ. 
Prac. & Rem. Code § 
74.351(r)(5)(A). Section 74.401 provides specific 
requirements for an expert to be qualified to provide the section 74.351 
report:
 
(a) In a suit involving a health care liability claim 
against a physician for injury to or death of a patient, a person may qualify as 
an expert witness on the issue of whether the physician departed from accepted 
standards of medical care only if the person is a physician who:
(1) is practicing medicine at 
the time such testimony is given or was practicing medicine at the time the 
claim arose;
(2) has knowledge of accepted 
standards of medical care for the diagnosis, care, or treatment of the illness, 
injury, or condition involved in the claim; and
(3) is qualified on the basis 
of training or experience to offer an expert opinion regarding those accepted 
standards of medical care.
 
Id. § 74.401(a). The Court has said that “[a] report 
by an unqualified expert will sometimes (though not always) reflect a good-faith 
effort sufficient to justify a 30-day extension.” In re Buster, 275 
S.W.3d 475, 477 (Tex. 2008) (per curiam) (citing 
Leland v. Brandal, 257 S.W.3d 204, 208 (Tex. 
2008)). The Court has recognized that not every doctor is qualified to render an 
opinion about every aspect of medicine or medical science. In re McAllen Med. 
Ctr., Inc., 275 S.W.3d 458, 463 (Tex. 2008); Broders v. Heise, 
924 S.W.2d 148, 152 (Tex. 1996) (“[G]iven the 
increasingly specialized and technical nature of medicine, there is no validity, 
if there ever was, to the notion that every licensed medical doctor should be 
automatically qualified to testify as an expert on every medical 
question.”).
            
The Court’s new test apparently allows a report to qualify as a deficient 
report even if the report demonstrates none of the three requirements of section 
74.401(a). The test requires only that the person rendering the opinion have 
some type of undefined level of expertise. It abandons the requirements that the 
report show the expert (1) has knowledge of accepted standards of care for the 
diagnosis, care, or treatment of the illness, injury, or condition involved in 
the claim; and (2) qualifies on the basis of training or experience to offer an 
expert opinion regarding those accepted standards of medical care. See 
Tex. Civ. Prac. & Rem. Code 
§74.401(a)(2), (3). Nor does the test require a showing 
that the expert is practicing medicine or was doing so when the claim arose. 
See id. § 74.401(a)(1).
            
Dr. Marable’s report says nothing about his 
surgical qualifications. The report does not give any facts or information which 
would qualify him to opine on the standards of care for the type of surgery 
performed in this case, and he did not attach a CV to the report.[2] The report was written on a letterhead 
showing that he maintains board certification in neurology and psychiatry. In 
his report he makes it clear that he is basing his opinion on his expertise in 
neurology, not surgery: “As a board certified neurologist, my opinion is that 
Dr. Ducic violated the standards of care, as well as 
Dr. Scoresby, and as a result [Santillan’s] damages 
are that of a right-sided hemiparesis with possibility 
of seizure foci in the future.” The neurological expertise on which Dr. Marable relies does not involve surgery. See Wilson Stegeman, Medical Terms 
Simplified 106 (1976) (noting that neurologists do not perform surgery); 
American Academy of Neurology, Working with Your Doctor, 
https://patients.aan.com/go/workingwithyourdoctor (last visited Apr. 18, 2011) 
(“Neurologists do not perform surgery.”). Dr. Marable’s report does not claim that he now performs or has 
in the past performed surgery, much less this particular type of surgery. The 
report neither claims that he has knowledge of the standard of care for 
performing the surgery nor that he is qualified on the basis of training or 
experience to offer an expert opinion on those standards of care. See 
Tex. Civ. Prac. & Rem. Code 
74.401(a)(2), (3). The report does not say that he has 
participated in, observed, or even read about how to do “procedures of left 
mediomaxillectomy, excision of neoplasm of the 
maxilla, calvarial bone growth and reconstruction of 
maxilla and excision of tumor of pterygopalatin 
structures,” which were the surgical procedures performed by Drs. Scoresby and 
Ducic.[3] In short, nothing in Dr. Marable’s report raises an inference that he is a qualified 
expert as to this type of surgery, as prescribed by statute, and the report is 
all that was before the trial court in regard to his qualifications.
            
In Ogletree v. Matthews, we 
considered a defendant’s contention that no statutory expert report had been 
filed because the report was by a radiologist who was not qualified to express 
an opinion on the standard of care for a urologist. 
262 S.W.3d 316, 319 (Tex. 2007). The urologist 
defendant had performed a urethral catheterization during which the patient 
suffered bruising and bladder perforation. Id. at 
317. We held that the radiologist’s report was deficient, not absent. 
Id. at 320. But in Ogletree the radiologist was opining about whether 
the urologist should have performed the catheterization under flouroscopic guidance in order to avoid or more timely 
diagnose the perforation. Id. at 318. In that 
instance, the radiologist was opining about whether the urologist should have 
involved radiology-related devices and techniques (the specialty in which the 
expert was qualified) in treating the patient and whether the failure to do so 
resulted in injury. The matter before us is different from Ogletree because there is no apparent closely related 
connection between the expertise involved in the specialty of neurology and the 
expertise involved in knowing how to perform, and performing, the surgery 
performed by Drs. Scoresby and Ducic.
            
In McAllen Medical Center, 275 S.W.3d 458, we considered the 
validity of a doctor’s expert reports in negligent credentialing suits against 
the medical center. McAllen challenged the adequacy of the reports on the basis 
that the doctor was not qualified to express opinions as to the credentialing 
process. Id. at 462. We agreed with McAllen and 
held that the reports were inadequate:
 
On this record, the plaintiffs have not established Dr. 
Brown’s qualifications. “The standard of care for a hospital is what an 
ordinarily prudent hospital would do under the same or similar circumstances.” 
Nothing in the record here shows how Dr. Brown is qualified to address this 
standard. Nor can we infer that she may have some knowledge or expertise that is 
not included in the record.
 
 Moreover, 
“a negligent credentialing claim involves a specialized standard of care” and 
“the health care industry has developed various guidelines to govern a 
hospital’s credentialing process.” Dr. Brown’s reports contain no reference to 
any of those guidelines, or any indication that she has special knowledge, 
training, or experience regarding this process. Nor was Dr. Brown qualified 
merely because she is a physician; “given the increasingly specialized and 
technical nature of medicine, there is no validity, if there ever was, to the 
notion that every licensed medical doctor should be automatically qualified to 
testify as an expert on every medical question.”
 
Id. at 463 (citations 
omitted).
            
The substance of the issue before us is similar to the issue we decided 
in McAllen Medical Center. Dr. Marable’s report 
indicates that the defendants violated standards of care for the surgery and 
their negligent activity caused damages to Santillan. 
But Dr. Marable’s report does not show he was 
qualified under the statute to give such an expert opinion, nor did his opinion 
about the surgeons’ decisions and actions during surgery involve his specialty 
except to the extent a physician with his specialty would have been involved in 
post-surgical care and possibly a decision to re-operate.
            
If Dr. Marable’s report had in some manner 
demonstrated that he was qualified to render an opinion about the standard of 
care for the surgery involved, then I might agree that his conclusory statements about the defendants having 
negligently violated applicable standards of care and those negligent activities 
having caused damages were sufficient to support an extension of time. But the 
report sets out his opinion as a neurologist, not a physician with surgical 
expertise. The Legislature did not intend that an expert report could be by a 
doctor with no demonstrated or inferable experience and training in a practice 
area who reads medical records and writes a report containing the simplistic 
indictments in the report here: the defendants negligently lacerated the brain 
and further surgery was required. See Tex. Civ. Prac. & Rem. 
Code § 
74.401(a).
            
The Court says that “‘there are constitutional limitations upon the power 
of courts . . . to dismiss an action without 
affording a party the opportunity for a hearing on the merits of his cause.’” 
___ S.W.3d at ___ (quoting TransAmerican 
Natural Gas Corp. v. Powell, 811 S.W.2d 913, 918 (Tex. 1991)). I agree. But 
the statement does not fit here. First of all, the constitutionality of the 
statute is not challenged. Second, even if it were, the statutory requirement of 
a timely report by a qualified expert did not spring upon Santillan without warning. The requirement was in place 
before the surgery took place in January 2006, while suit was not filed against 
the defendant doctors and Tarrant County Hospital until January 2008. Santillan had time to find a qualified expert to provide the 
report required to show his claim had merit, if he could find such an 
expert.
            
I would hold that failure to timely serve a report by an expert qualified 
under the statute is not merely a deficiency in an element of the report, it is a deficiency going to the question of whether 
the report is competent and is entitled to be given any weight. And I would hold 
that it is not an expert report and the filing of such a report supports 
inferences that a proper report by a qualified expert was not available, the 
claim lacks merit, and the claim should be dismissed.
            
I would reverse the judgment of the court of appeals and dismiss the 
case. See Badiga v. Lopez, 274 S.W.3d 681, 684-85 (Tex. 2009).
 
 
                                                                        
________________________________________
                                                                        
Phil Johnson
                                                                        
Justice
 
 
 OPINION 
DELIVERED: July 1, 2011






[1] Further 
references to the Civil Practice and Remedies Code will be by referring to 
section numbers unless otherwise indicated.

[2] An 
amended report by Dr. Marable with a CV attached was 
filed on the day the defendants’ motions to dismiss were heard. The CV was not 
considered by the trial court, but it did not show that Dr. Marable had any training or expertise in the type of surgery 
involved here.

[3] Santillan’s attorney represented during oral argument that 
he believed Dr. Marable’s amended report contained 
statements by Dr. Marable that he had seen surgery of 
this type because he had treated patients after they had the 
surgery.