NUMBER 13-10-00532-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

JOSE L. VILLARREAL, D.D.S.,                                             
     Appellant,

 

v.

 

MARIANELA HERNANDEZ,                                                                  
 Appellee.

                                                                                                                             

 

On appeal from the County
Court at Law No. 5

of Hidalgo County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Garza

Memorandum Opinion by
Justice Garza

 

In this interlocutory appeal,
appellant Jose L. Villarreal, D.D.S., contends that the trial court erred in
denying his motion to dismiss the dental malpractice suit brought by appellee Marianela
Hernandez.  Dr. Villarreal argues by a single issue that the suit should have
been dismissed because Hernandez failed to comply with the medical expert
report requirement.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011).  We dismiss the
appeal for want of jurisdiction.

I. 
Background

            In her original petition
filed on February 23, 2010, Hernandez asserted that Dr. Villarreal provided
negligent dental care by “[r]epresenting that a Root Canal [was] necessary when
it was not” and by “[p]erforming a Root Canal that was not necessary.”  On
April 5, 2010, Hernandez served upon defense counsel two letters authored by
Julio C. de la Fuente, D.D.S., purporting to be expert medical reports.  See
id.  The first letter stated, in its entirety, as follows:

Mrs. Marianela Hernandez was examined
by me on September 17, 2009.  At the time of examination, she was found to be
missing several molars on upper and lower, [and to] have several amalgam
fillings and recurrent caries[[1]]
on premolars.  She also has root canal treatments on #10 and 11 with a post and
build up on both and recurrent caries on both.

 

Tooth #10 (maxillary left lateral) is
fractured at the gumline and has no clinical crown remaining.  The tooth has a
short root and restoring it in this condition would cause the root to fracture
and the tooth to fail.

 

Tooth #11 (maxillary left canine) has
recurrent caries on clinical crown and no visible periapical[[2]]
lesion.

 

Tooth #11 would need to have a core
build up completed to remove any existing caries and a porcelain crown placed
to restore tooth.  Tooth #10 would need to be removed and replaced with an
implant, and later restored with a porcelain crown.

 

The second letter was exactly the same
as the first, except that it also included the following paragraph:

Mrs. Hernandez explained that she did
not have any root canal treatments on teeth #10 or 11 before she went to see
Dr. Villarreal.  She also explained that the root canal was needed on tooth #11
and Dr. Villarreal did it on the wrong tooth and did it on 10.  He later did
the root canal on #11.  Based on what the patient has explained and the clinical
findings, it is my opinion that tooth #10 would not have any problems were it
not for the root canal treatment that was mistakenly done on it.

 

            Dr.
Villarreal subsequently objected to the purported reports and moved to dismiss
the case.  Dr. Villarreal specifically argued that Dr. de la Fuente’s letters do
not actually constitute “reports” at all because they “utterly ignore[d] the
statutory requirements of addressing the required standard of care of this
Defendant, how the ‘expert’ is knowledgeable factually in that standard of
care, and . . . proximate cause.”[3]

The trial court found
the reports insufficient, but denied Dr. Villarreal’s motion to dismiss and
instead granted Hernandez a thirty-day extension of time to cure the reports.  See
id. § 74.351(c).  This interlocutory
appeal followed.  See id. § 51.014(a)(9) (West 2008) (permitting appeal
of interlocutory order denying all or part of a motion to dismiss for failure
to serve an expert report in a health care liability claim); Badiga v. Lopez,
274 S.W.3d 681, 685 (Tex. 2009) (“A provider may pursue an interlocutory appeal
of the denial of a motion to dismiss when no expert report has been
timely served, whether or not the trial court grants an extension of time.”
(Emphasis added.)); cf. Ogletree v. Matthews, 262 S.W.3d 316, 321 (Tex.
2007) (holding that, if a deficient report is served and the
trial court grants a thirty-day extension, that decision, even if coupled with
a denial of a motion to dismiss, is not subject to interlocutory appeal).

II. 
Discussion

A.        Standard of
Review

            We review a trial
court’s order denying a motion to dismiss for failure to comply with the expert
report requirement under an abuse of discretion standard.  NCED Mental
Health, Inc. v. Kidd, 214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.); Kendrick
v. Garcia, 171 S.W.3d 698, 702 (Tex. App.–Eastland 2005, pet. denied).  A
trial court abuses its discretion if it acts in an arbitrary or unreasonable
manner or without reference to any guiding rules or principles.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  However, a
trial court has no discretion in determining what the law is or in applying the
law to the facts.  Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Baylor
Univ. Med. Ctr. v. Biggs, 237 S.W.3d 909, 916 (Tex. App.–Dallas 2007, pet.
denied).

B.        Applicable
Law

            Under
chapter 74, a plaintiff asserting a health care liability claim must serve a
medical expert report upon each party's attorney no later than the 120th day
after the date the original petition was filed.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).  The report
must

provide[] a fair summary of the expert’s
opinions as of the date of the report regarding applicable standards of care,
the manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.

 

Id. § 74.351(r)(6). 
Although a report need not marshal all of a claimant’s proof, it must include
the expert’s opinion on each of the elements identified in section 74.351.  Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex.
2001).

When a defendant
files a motion challenging the adequacy of a report, the trial court will grant
the motion only if, after a hearing, it appears that the report does not
represent an “objective good faith effort to comply with the definition of an
expert report in Subsection (r)(6).”  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(l).  To constitute a “good
faith effort,” the report must provide enough information to (1) inform the
defendant of the specific conduct the plaintiff has called into question, and
(2) provide a basis for the trial court to conclude that the claims have merit.
 Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002); see
Palacios, 46 S.W.3d at 879.

If an expert report
has been served within the 120-day period but elements of the report are found
deficient, the court may grant one thirty-day extension to the claimant in
order to cure the deficiency.  Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(c).  On the other hand, if no expert
report at all is filed within the 120-day period, no extension is permitted,
and the trial court must dismiss the claim against the defendant and award
reasonable attorney’s fees.  Id.  § 74.351(b).

C.        Analysis

            On
appeal, Dr. Villarreal argues that Dr. de la Fuente’s letters, taken together,
constitute an “‘absent report’ because it wholly fails to address any of the
elements required to meet the definition of an ‘expert report.’”  According to
Dr. Villarreal, because “no report” was served, Hernandez was not entitled to a
thirty-day extension of time to cure any deficiencies.  See id. §
74.351(c).

            As we recently
noted in De La Garza v. Schruz, No. 13-10-00468-CV, 2011 Tex. App. LEXIS
4238, at *9 (Tex. App.–Corpus Christi June 2, 2011, no pet. h.) (mem. op.), the
Texas Supreme Court has not yet squarely addressed this issue.  However, several
recent cases presented similar fact patterns:

In Ogletree v. Matthews, the
defendant urologist argued that the plaintiff’s expert reports were so
deficient as to be “nonexistent” because they were authored by nurses and a
radiologist.  262 S.W.3d 316, 318 (Tex. 2007).  The Court noted that a
“deficient” report differs from an “absent” report in one “important respect”: 
when the former is served by a health care liability plaintiff, the trial court
retains its discretion to grant a thirty-day extension to cure the report;
whereas when the latter is served, no extension is permitted.  Id.  In
that case, the Court concluded that the expert reports were “deficient,” and
not “absent.”  Id. at 321.  In a concurring opinion, Justice Willett
observed that, in addition to “deficient” and “absent” reports, “there exists a
third, albeit rare, category:  a document so utterly lacking that, no matter
how charitably viewed, it simply cannot be deemed an ‘expert report’ at all,
even a deficient one.”  Id. at 323 (Willett, J., concurring).  Such a
document

 

may not purport to be a report at all,
and its author may not have intended it as such.  For example, it may (by its
own terms) be provider correspondence or perhaps “medical or hospital records
or other documents” or other health-related paperwork that, while related to
the patient’s care and condition, neglects altogether to address the
rudimentary elements of an expert report; indeed, it may never and nowhere
accuse anyone of doing anything wrong.  Such information certainly constitutes
discoverable and highly relevant information in a lawsuit, but any claimant
passing off such material as an expert report, and any court treating it as
such, evinces a complete disregard for Chapter 74’s unambiguous statutory
criteria.

 

Id. (footnotes omitted).

 

            Several months after Ogletree,
in Lewis v. Funderburk, 253 S.W.3d 204 (Tex. 2008), the supreme court
enjoyed an “actual sighting of this rare bird.”  Id. at 210 (Willett,
J., concurring).  In Lewis, the defendant doctor moved to dismiss the
plaintiff’s case against him for failure to file an expert report.  Id.
at 206.  In response, the plaintiff pointed to a “thank-you-for-your-referral
letter” in the medical records.  Id.  The trial court denied the
defendant’s motion to dismiss and granted the plaintiff a thirty-day extension,
during which the plaintiff filed a second report.  Id.  The defendant
again moved to dismiss, the trial court again denied the motion, and the
defendant appealed.  Id. at 206-07.  The appellate court dismissed the
appeal for lack of jurisdiction, but the supreme court reversed, noting that
subsection 74.351(c) “defines a timely but deficient report as one that ‘has
not been served,’” and therefore, an interlocutory appeal was permitted in that
case under subsection 74.351(b).  Id. at 207-08; see Tex. Civ. Prac. & Rem. Code Ann. §
51.014 (permitting appeal of interlocutory order dismissing case under
subsection 74.351(b)); id. § 74.351(b) (requiring dismissal when report
“has not been served” within 120 days).  In another concurring opinion, Justice
Willett argued that the defendant in Lewis was entitled to appeal the
trial court’s initial denial of his motion to dismiss for failure to file an
expert report, because the initial report was, in effect, no report at all.  Lewis,
253 S.W.3d at 210 (Willett, J., concurring).  “This doctor-signed letter is no
more a report than a doctor-signed prescription or Christmas card would be.”  Id.
at 211.  In contrast to the report at issue in Ogletree, the initial
report in Lewis “totally omits the required statutory elements, . . .
makes no colorable attempt to demonstrate liability,” and “never once accuse[s]
anyone of doing anything wrong.”  Id. at 211-12 (internal quotations
omitted).  Therefore, according to Justice Willett, the trial court had no
choice but to grant the defendant’s initial motion to dismiss.  Id. at
212.

 

            Similarly, in In re
Watkins, a health care liability plaintiff filed a purported expert report
that “was merely a narrative of treatment, and failed to address the standard
of care, breach, or causation.”  279 S.W.3d 633, 633 (Tex. 2009) (orig.
proceeding).  After the trial court granted a thirty-day extension, the
plaintiff filed a new report, which the defendant did not challenge.  Id.
at 633-34.  On appeal and by a petition for writ of mandamus, the defendant
sought review of the trial court’s granting of the thirty-day extension.  Id.
at 634.  In a majority opinion, this Court found that, because the trial court
implicitly found the report to be merely deficient—and not so woefully
inadequate as to constitute no report at all—it did not abuse its discretion in
granting the extension.  Watkins v. Jones, 192 S.W.3d 672, 675 (Tex.
App.–Corpus Christi 2006, no pet.) (combined appeal & orig. proceeding). 
Without determining whether the report was absent or merely deficient, a
majority of the supreme court agreed that mandamus was unwarranted.  In re
Watkins, 279 S.W.3d at 634.  The Court reasoned that “[i]f no report was
served, an interlocutory appeal was available, so mandamus is unnecessary.  If
the report was merely deficient, than an interlocutory appeal was prohibited,
and granting mandamus to review it would subvert the Legislature’s limit on
such review.”  Id. (footnotes omitted).

 

In concurring with the judgment,
Justices Johnson and Willett opined that the purported expert report in Watkins
was not, in fact, an expert report at all, because it “does not purport to have
any relationship to a health care liability or malpractice case.”  Id.
at 635 (Johnson, J., concurring); id. at 637 (Willett, J., concurring)
(noting that the purported expert report “omits all three (four if you count
the missing curriculum vitae; five if you count the absence of any expert opinion)”
statutory requirements and stating that “[t]his is no more an expert report
than my son’s tricycle is a Harley”).  According to Justices Johnson and
Willett, because this case involved an absent report rather than a deficient
report, the defendant had the right to appeal the trial court’s interlocutory
order denying dismissal.  Id. at 635-36, 639-40; see Badiga, 274
S.W.3d at 685 (“A provider may pursue an interlocutory appeal of the denial of
a motion to dismiss when no expert report has been timely served, whether or
not the trial court grants an extension of time.”).  Having found that the
defendant had an adequate remedy by appeal, Justices Johnson and Willett
concurred in the majority’s judgment that mandamus was inappropriate.  In re
Watkins, 279 S.W.3d at 636 (Johnson, J., concurring); id. at 639-40
(Willett, J., concurring).  In his concurrence in Watkins, Justice
Willett summed up his views on this issue as previously expressed in Ogletree
and Lewis:

 

I concede that courts, this one
included, cannot decree with micrometer-like precision when something falls
from deficient to so-deficient-it’s-absent.  Each case has its own distinct
facts, but judges are not incapable of applying indistinct lines, or at a
minimum prescribing the outer ones.  One bright-line marker seems beyond
reasonable objection:  when a “report” contains none of the statutorily
prescribed contents. . . .  If a document bears zero resemblance
to the statute—containing nothing that makes a report a report—it cannot
receive an extension.

 

In re Watkins, 279 S.W.3d at 639.

 

            . . . .

 

In Ogletree, the majority of
the supreme court implicitly limited “the universe of possible reports” to “two
(and only two) types:  absent reports, which have not been filed at all and
require dismissal of the case, and deficient reports, which have been timely
filed and may receive an extension.”  262 S.W.3d at 323 (Willett, J.,
concurring).  Justices Johnson and Willett have argued in concurring opinions
that there is in fact a third category of purported reports—those that have
been filed but are “so utterly lacking” as to merit immediate dismissal—but
that view has not been endorsed by a majority of the Court.  As our colleagues
in Fort Worth stated in 2009:

 

At present, neither Ogletree
nor any other supreme court opinion holds that a timely served expert report
containing a narrative that fails to include any expert opinion on the standard
of care, breach, or causation is tantamount to no report at all and thus
ineligible for any section 74.351(c) extension.  Until a majority of the
supreme court so holds, such a determination by this court would necessarily
constitute a modification to Ogletree’s absent or deficient expert
report limitation, which would be improper because we are bound as an
intermediate appellate court by supreme court precedent.

 

Scoresby v. Santillan, 287 S.W.3d 319, 324 (Tex. App.–Fort
Worth 2009, pet. granted) (citing City of Mission v. Cantu, 89 S.W.3d
795, 809 n.21 (Tex. App.–Corpus Christi 2002, no pet.) (“As an intermediate appellate
court, we are bound to follow the expression of the law as stated by the Texas
Supreme Court and leave changes in the law to that court or the legislature.”)).

 

De La Garza, 2011 Tex. App.
LEXIS 4238, at *9-19 (footnote omitted).

In De La Garza,
the plaintiff’s purported expert report actually exonerated the defendant of
any wrongdoing.  See id. at *4.  Nevertheless, we found that the
purported report was merely “deficient,” and not “absent,” because, although it
“undisputedly failed to state that [the defendant] had breached any standard of
care, the document was in fact timely served.”  Id. at *20.  “Because
neither the supreme court nor this Court has recognized the possibility that a
timely filed report may be, in effect, no report,” we had “no choice but to
conclude that this is a ‘deficient report’ case, not an ‘absent report’ case.”  Id.

Though insufficient
to satisfy chapter 74, Dr. de la Fuente’s second letter is stronger than the
report we considered in De La Garza.  The letter stated that Dr.
Villarreal initially performed Hernandez’s root canal “on the wrong tooth.”  Dr.
de la Fuente further stated that, in his opinion, “tooth #10 would not have any
problems were it not for the root canal treatment that was mistakenly done on
it.”  Although these statements are not explicitly labeled as descriptions of
the standard of care, breach, and causation elements, they do clearly suggest
that Dr. Villarreal breached the applicable standard of care by performing a
root canal on the wrong tooth, and that the tooth would not have had “any
problems” but for the erroneous procedure.

Even if we were to
adopt the position of Justices Johnson and Willett—that a report, though timely
filed, may be so woefully inadequate as to be considered “no report”—we would
likely conclude that Dr. de la Fuente’s second letter was not “so utterly
lacking” as to constitute “no report” at all.  Cf. In re Watkins, 279
S.W.3d at 639 (Willett, J., concurring) (arguing that a purported report is
actually “no report” when it “contains none of the statutorily prescribed
contents”); Ogletree, 262 S.W.3d at 323 (Willett, J., concurring)
(arguing that a timely filed report should be considered absent if it “neglects
altogether to address the rudimentary elements of an expert report” or “never
and nowhere accuse[s] anyone of doing anything wrong”); Lewis, 253
S.W.3d at 211-12 (Willett, J., concurring) (urging that a purported report be
considered absent when it “totally omits the required statutory elements and
makes no colorable attempt to demonstrate liability”).  But, as we noted in De
La Garza, the position articulated by Justices Johnson and Willett has not
been endorsed by a majority of the supreme court.  In fact, neither the supreme
court nor this Court has recognized the possibility that a timely filed report
may be, in effect, no report.  See Scoresby, 287 S.W.3d at 325
(concluding that, regardless of whether the purported expert report was
“utterly lacking,” it was timely served and so cannot be considered “absent”
under Ogletree); see also De La Garza, 2011 Tex. App. LEXIS 4238,
at *20.  Accordingly, we have no choice but to conclude that Dr. de la Fuente’s
second letter is “deficient,” not “absent.”

The trial court did
not abuse its discretion in denying Dr. Villarreal’s motion to dismiss and
granting Hernandez a thirty-day extension to file a compliant report.  We
overrule Dr. Villarreal’s issue.

III.  Conclusion

            In light of our
conclusion that the trial court did not err in finding Dr. de la Fuente’s purported
report to be merely deficient, rather than no report at all, we dismiss the
appeal for want of jurisdiction.  See Tex.
R. App. P. 43.2(f); Ogletree, 262 S.W.3d at 321 (holding that, if a deficient report is served and the trial
court grants a thirty-day extension, that decision, even if coupled with a
denial of a motion to dismiss, is not subject to interlocutory appeal).

 

DORI CONTRERAS GARZA

Justice

 

Delivered
and filed the

9th
day of June, 2011.









[1]
“Caries” is defined as “[t]he localized, gradual destruction of teeth by
inorganic acids and bacteria . . . .”  Ida
G. Dox, et al., Attorney’s Illustrated Medical Dictionary C14 (1997).

 





[2]
“Periapical” is defined as “[a]round a dental root, including the alveolar
bone.”  Id. at P21.





[3]
Dr. Villarreal also argued in his motion to dismiss that Dr. de la Fuente’s
letters did not constitute “reports” because they did not “indicate that [they
are] report[s] generated to comply with the statutory requirements of Chapter
74.351” and because they were not accompanied by Dr. de la Fuente’s curriculum
vitae.  However, he does not advance these assertions on appeal.