**HEALTHSOUTH OF HOUSTON, INC. d/b/a HealthSouth Rehabilitation Hospital of North Houston, Appellant,**

v.

**Wilma V. PARKS, Individually and as the Independent Executrix of the Estate of Frank S. Parks, Appellee.**

No. 09–10–00317–CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 29, 2010.

Decided Dec. 9, 2010.

Wesley Nagorny III, Juliet K. Stipeche, Nagorny & Stipeche, P.C., Houston, for Appellant.

Kent J. Lisenby, Chuck Axmacher, The Lisenby Law Firm, P.C., Fort Worth, for Appellee.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

Appellee Wilma V. Parks, individually and as the independent executrix of the Estate of Frank S. Parks, deceased, sued appellant HealthSouth of Houston, Inc. d/b/a HealthSouth Rehabilitation Hospital of North Houston ("HealthSouth") for alleged medical malpractice. HealthSouth objected to the adequacy of Parks's expert report and subsequently filed a motion to dismiss based on the objections. At the time of the hearing on the objections to the report, Parks was still within the 120–day window in which to serve a sufficient expert report as provided by section 74.351. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351 (West.Supp.2010). The trial court overruled the objections and later denied HealthSouth's motion to dismiss. HealthSouth then filed this interlocutory appeal. *See id.* § 51.014(a)(9) (West 2008). We reverse and remand to the trial court.

## BACKGROUND

Appellee Wilma Parks brought a health care liability claim against HealthSouth wherein she alleged that her husband,

Frank Parks, was admitted to Health-South on January 5, 2009, for rehabilitation of injuries he received in a motor vehicle accident. She further alleged that on the day of admission, HealthSouth's nurses left Mr. Parks alone and unsecured. During such time, he fell and received serious injuries to his face and head, and he later died on February 12, 2009. Parks contends that HealthSouth's negligence "was a proximate cause of the injuries and damages suffered by Frank Parks and his resulting death," and Parks sought damages under the Texas Wrongful Death Act and Texas Survival Statute.

Pursuant to section 74.351 of the Texas Civil Practice and Remedies Code, Parks timely served a purported expert report from Cynthia Stinson, Ph.D., APRN–BC. Stinson's report implicates as deficient the care HealthSouth's nursing staff provided to Mr. Parks. Stinson's report notes that "[Mr. Parks] scored a 50 on the Morse Fall risk assessment[,] which indicated he needed 'strict fall precautions.' " Stinson opines,

It is my opinion that nurses at Health-South Rehabilitation Hospital of North Houston did not meet the Standard of Care for Mr. Frank Parks based on the following standards from the Nurse Practice Act for the state of Texas:

1. Rule 217.11 D. Nursing Interventions: Nurses must accurately and completely report and document— client's status (including signs and symptoms), nursing care rendered, physician orders, administration of medications, and treatments, and contact with other health care team members.

2. Rule 217.11 M. Nursing Interventions: Institute appropriate nursing interventions that might be required to stabilize a client's condition and/or prevent complications.

3. Rule 217.11 P. Collaboration: Collaborate with the client, members of the health team, and when appropriate the client's significant other.

According to documentation by Dr[.] Agana "actual events of the fall are not known from the Nursing notes." Documentation does not indicate that nurses took any precautions to prevent the fall. On the Safety Risk for Fall Plan of Care the "Yellow Action/Interventions" are checked. However[,] there is no documentation to what exact precautions were taken if any to prevent Mr. Parks' fall based on this Plan of Care.

This was an older man who sustained traumatic injuries from a MVA two weeks before the fall in the Rehabilitation Center. According to the consultation at Conroe Regional Center he had some altered mental status. Past history also indicates that he had atrial fibrillation, diabetes, wore glasses, and had difficulty hearing. He also had been experiencing "a great deal of pain." On Pre-admission Screening the HGB on 12/29/08 was 8.8 and HCT was 25.8 (indicating anemia). All of these conditions contribute to the NANDA nursing diagnosis Risk for Falls. Prudent nurses caring for Mr. Parks at Healthsouth Rehabilitation should have been aware of this and taken necessary precautions to prevent falls and prevent injury.

Due to the Pre-assessment and Interdisciplinary assessment nurses were aware that Mr. Parks was at high risk for falls and should have taken precautions to prevent falls. Although the Interdisciplinary Plan of Care indicates that Mr. Parks should have had a chair alarm and bed alarm, there is no indication these were in place when patient fell. There is no indication in the documentation that nurses did any intervention to prevent the fall. These interventions would have included the following

but not limited to: bed alarms, placement of patients close to nurses' station, encouraging family members to stay with patient, and low bed. Documentation on Daily Flowsheet/Treatment Record indicates that there was no bed alarm, chair alarm, or restraint in use at time of the fall to Mr. Parks.

Mr. Parks was found lying "in fresh bright blood face down" at 0030 1/5/09 indicating he was not being observed to determine the exact time of the fall. There is no indication from nursing documentation at 0030 that nurses did any type of assessment to determine the extent of injuries even though the patient was bleeding, had a cut above the right eye, and was disoriented. There is no indication nurses notified the physician of the extremely low blood pressure patient exhibited when found on floor (105/63). Nor was his blood sugar tested to determine if he was hypoglycemic. There was no indication of any type of neurological assessment to determine injury to the head or elsewhere in nursing documentation. Nor was there any type of assessment to determine if patient had any fractures. The nurses did not institute interventions to prevent complications. There is no indication from documentation or from Dr. Agana that nurses informed the physician of the extent of injuries to Mr. Parks due to the scanty documentation by nurses and lack of assessment by Dr. Agana before transfer to the acute facility.

Not only were nurses negligent in care of Mr. Parks before the fall but they were also negligent in care of Mr. Parks after the fall. It is my opinion that nurses at Healthsouth Rehabilitation Hospital of North Houston did not meet the Standard of Care for this patient.

HealthSouth timely objected to the sufficiency of the expert report. The trial court held a hearing on HealthSouth's objections. At the time of the hearing, Parks was still within the 120–day window for providing the initial expert report as required by statute. At the hearing, the trial court overruled HealthSouth's objections, finding Stinson's report sufficient. More than 120 days after Parks filed her original petition, HealthSouth moved to dismiss the case challenging Stinson's qualifications and the sufficiency of her expert report. HealthSouth argued that because Stinson's report lacked an opinion on causation, the report was not only deficient, but amounted to no report. The trial court again found Stinson's report sufficient and denied HealthSouth's motion to dismiss.

In a single issue, HealthSouth contends that the trial court abused its discretion by denying its motion to dismiss because Parks failed to produce an expert report that complied with the requirements of section 74.351 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351.

## STANDARD OF REVIEW

We review a trial court's decision regarding the adequacy of an expert report under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877–78 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). A trial court also abuses its discretion if it fails to analyze or correctly apply the law. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

## PERTINENT LAW AND APPLICATION

*Adequacy of the Expert Report*

A plaintiff who asserts a health care liability claim must provide each defendant physician and health care provider with an expert report no later than the 120th day after filing suit. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a). A health care institution is included within the definition of "health care provider." *Id.* § 74.001(a)(12)(A)(vii) (West 2005). The statute defines an expert report as:

> [A] written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6) (West Supp.2010). The statute further sets forth the qualifications of expert witnesses on causation in health care liability claims and provides as follows, in pertinent part:

> [I]n a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

*Id.* § 74.403(a) (West 2005). From this provision it follows that a nurse is not statutorily qualified to provide an expert report on the issue of causation in a health care liability claim. *Baptist Hosps. of Se. Tex. v. Sebile,* No. 09-09-00333-CV, 2010 WL 364323, at *3 (Tex.App.-Beaumont Jan. 28, 2010, pet. denied) (mem.op.) (op. on reh'g); *Hopkins County Hosp. Dist. v. Ray,* No. 06-08-00129-CV, 2009 WL 454338, at *3 (Tex.App.-Texarkana Feb. 24, 2009, no pet.) (mem.op.).

Expert reports serve two purposes: (1) to "inform the defendant of the specific conduct [the claimant] has called into question" and (2) to "provide a basis for the trial court to conclude that the claims have merit." *Palacios,* 46 S.W.3d at 879. The report must be authored by a qualified expert, as defined by subsection (r)(5), and contain the expert's opinion with regard to the standard of care, the manner in which the health care provider failed to meet that standard, and the causal relationship between that failure and the plaintiff's injury. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(5)-(6).

A defendant may file a motion challenging the sufficiency of the expert report not later than the 21st day after the date the report was served. *Id.* § 74.351(a). The trial court "shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*). To constitute a good-faith effort to provide a fair summary of an expert's opinions, an expert report must discuss the standard of care, breach, and causation. *Palacios,* 46 S.W.3d at 875. When determining whether the report represents a good-faith effort, the trial court's inquiry is limited to the four corners of the report. *Id.* at 878. If the claimant fails to serve the report within 120 days, the trial court must grant the affected party's motion to dismiss the claim, and the failure to do so is subject to interlocutory appeal.

*Ogletree v. Matthews,* 262 S.W.3d 316, 317 (Tex.2007).

In *Jernigan v. Langley,* the Texas Supreme Court considered the sufficiency of expert reports when one report did not reference the physician at all and the other report only mentioned the physician in this single sentence: " 'At 4:30 p.m. [John Langley's] case was discussed with Dr. Jernigan and at 4:50 p.m. a lactulose enema was ordered.' " 195 S.W.3d 91, 93 (Tex. 2006). The Court held that the claimant's expert reports failed to comply with the statutory requirements because

> [e]ven if we assume that the reports address the standard of care with respect to each doctor, ... neither report addresses how *Dr. Jernigan* breached the standard or how his unstated breach of duty caused John's death with sufficient specificity for the trial court, and Jernigan, to determine that the allegations against Jernigan had any merit.

*Id.* at 94.

However, in *Morris v. Umberson,* the trial court denied the defendant-doctor's motion to dismiss based on the sufficiency of the expert report, but found the expert report deficient as to causation and granted the claimant a thirty-day extension to cure the deficiency. 312 S.W.3d 763, 764 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). On appeal, the defendant-doctor challenged the trial court's order and argued that the expert report " 'completely omits any intelligent discussion of causation and, necessarily, is tantamount to serving no report at all,' " and further argued that the trial court did not have discretion to grant the claimant a thirty-day extension to cure. *Id.* at 767. The court held that the expert report implicated the defendant-doctor and specifically named him, discussed the standard of care,

explained how the doctor's actions breached the standard, and addressed causation. *Id.* at 770. The court further held that because the report implicated the defendant-doctor, the report did not equate to "no report." *Id.* The court addressed the issue as one in which the defendant-doctor "is essentially asking us to label as 'no report' a timely served expert report that expressly implicates [the defendant-doctor], but which he asserts is deficient and woefully inadequate as if it is 'no report.' This we cannot do." *Id.* The court held that the trial court did not err in granting a thirty-day extension to cure a timely served, but deficient expert report. *Id.* at 770–71.

Here, because Stinson is undisputedly a nurse rather than a physician, she is not qualified under section 74.403 to offer an opinion as to causation. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.403. Additionally, the report fails to address the causal relationship between the alleged negligence of HealthSouth's nurses and Parks's death. Thus, we find the report is deficient and the trial court abused its discretion in applying the law to this report.[1]

*Thirty–Day Extension*

■ Having concluded the trial court erred, we must now address the relief to which HealthSouth is entitled. HealthSouth asks this court to reverse the trial court's order and render judgment dismissing Parks's claims. Parks responds by requesting this court to remand the cause to the trial court to consider granting a thirty-day extension. HealthSouth argues that Stinson's expert report is not merely deficient, but is not curable and as such, Parks is not entitled to a thirty-day extension. We disagree.

---

1. We need not address appellants' remaining arguments listed as sub-parts of this issue, as

they would not result in greater relief. *See* Tex.R.App. P. 47.1.

Section 74.351(c) provides that if the claimant serves a purported report timely, but the trial court finds elements of the report are deficient, then the court may grant a single, thirty-day extension to the claimant to cure that deficiency. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(c); *see also Ogletree*, 262 S.W.3d at 319. If the appellate court finds the report deficient, the statute permits the appellate court to remand the case to the trial court to consider a thirty-day extension to allow the plaintiff an opportunity to cure the deficiency. *See Leland v. Brandal*, 257 S.W.3d 204, 207–08 (Tex.2008); *see also Pangburn v. Anderson*, No. 09–09–00169–CV, 2009 WL 4852211, at *7 (Tex.App.-Beaumont Dec. 17, 2009, no pet.) (holding expert reports were deficient as to three different defendants and remanding the cause to the trial court to consider granting a thirty-day extension of time to cure the deficiencies); *Johnson v. Willens*, 286 S.W.3d 560, 565–66 (Tex.App.-Beaumont 2009, pet. filed) (holding that expert report was deficient because it merely stated the expert's conclusions and concluding that claimant was entitled to have the trial court consider whether he should receive an extension under section 74.351(c)); *Christus Health Se. Tex. v. Broussard*, 267 S.W.3d 531, 536–37 (Tex.App.-Beaumont 2008, no pet.) (holding that expert report was deficient when expert failed to established qualifications to issue opinion as to standard of care and hospital administrative decisions and remanding cause to trial court to consider thirty-day extension to cure); *Craig v. Dearbonne*, 259 S.W.3d 308, 313 (Tex.App.-Beaumont 2008, no pet.) (holding expert report deficient as to causation and remanding cause to trial court to consider whether to grant a thirty-day extension to cure); *but see Gingrich v. Scarborough*, No. 09–09–00211–CV, 2010 WL 1711067, at *4–5 (Tex.App.-Beaumont Apr. 29, 2010, no pet.) (mem.op.)

(holding that expert report that did not adequately address causation constituted "no report at all" with respect to some defendants).

The Texas Supreme Court has discussed this issue, but has not directly resolved it. In *Ogletree*, the Court appeared to divide the universe of possible reports into two categories: deficient and absent reports. *Ogletree*, 262 S.W.3d at 320. In that case, the claimants timely filed multiple expert reports in support of their claims against a hospital and a physician. *Id.* at 317. One of the expert reports was authored by a radiologist, the others by nurses. *Id.* The radiologist's report concerned the physician's care of the patient, while the nurses' reports primarily concerned the care provided by the hospital's nursing staff. *Id.* at 317–18. The physician timely objected to the reports, arguing that neither the radiologist nor the nurses were qualified to render an opinion on a urologist's standard of care. *Id.* at 318. He further argued that the radiologist failed to produce his curriculum vitae as required by the statute. *Id.* The trial court denied his motion and granted the plaintiffs a thirty-day extension to cure the deficiencies. *Id.* The physician-defendant argued before the Texas Supreme Court that "as a radiologist, Dr. Karsh may not opine on an urologist's standard of care and, therefore, no report was served that met the statutory definition of an 'expert report.'" *Id.* at 319. The physician further argued that since no report was served, the trial court had no discretion to grant a thirty-day extension. *Id.* In interpreting section 74.351, the Court explained that "the Legislature recognized that not all initial timely served reports would satisfy each of the statutory criteria[,]" which is why the Legislature amended the statute to "explicitly give trial courts discretion to grant a thirty day extension so that parties may, where possi-

ble, cure deficient reports." *Id.* at 320. Thus, "a deficient report differs from an absent report." [2] *Id.*

In his concurring opinion, Justice Willett observed that "the Court's classification of all purported expert reports as either absent or deficient may prove inapposite in rare cases—where the claimed 'report' is actually no such thing—and inadvertently expand the availability of the thirty-day extension provided by section 74.351(c) beyond what the Legislature intended." *Ogletree*, 262 S.W.3d at 322 (Willett, J., concurring). He therefore argued the need for a third category for "a document so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one." *Id.* at 323.

In *In re Watkins*, Justice Willett conceded that this issue was not squarely before the Court, but again discussed the no report versus deficient report issue in his concurrence. 279 S.W.3d 633, 636–40 (Tex.2009) (Willett, J., concurring). In *Watkins*, the expert report consisted of a one-page narrative of the treatment the patient received. *Id.* at 638. The trial court determined that the issue was "not even close" and found the report was merely a narrative and did not constitute an expert report, and then granted an extension for the claimant to cure. *Id.* Justice Willett described the issue as "whether there can be interlocutory review of a denied dismissal motion when there is no report as opposed to (and note this locution) 'a report *that implicated a provider's conduct* but was somehow deficient.'" *Id.* at 638 (footnote omitted). Justice Willett noted that in *Watkins*, the claimant's report implicated *"nobody's* con-

duct" and "'is no more a report than a doctor-signed prescription or Christmas card would be.'" *Id.* (footnote omitted). Justice Willett continued:

I concede that courts, this one included, cannot decree with micrometer-like precision when something falls from deficient to so-deficient-it's-absent. Each case has its own distinct facts, but judges are not incapable of applying indistinct lines, or at minimum prescribing the outer ones. One bright-line marker seems beyond reasonable objection: when a "report" contains none of the statutorily prescribed contents. There must exist an agreed outer fringe, and the superficial document in this case lies beyond it.

*Id.* at 639.

A majority of the Texas Supreme Court has not yet embraced Justice Willett's analysis. Until a majority of the Court so holds, such a determination by this court would constitute a modification of *Ogletree's* absent or deficient expert report classification, which is beyond our authority. *See Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex.2002) ("It is not the function of a court of appeals to abrogate or modify established [Supreme Court] precedent."); *Scoresby v. Santillan*, 287 S.W.3d 319, 324 (Tex.App.-Fort Worth 2009, pet. granted) (concluding that a determination that a timely filed expert report is tantamount to no report at all and thus ineligible for a section 74.351(c) extension would "constitute a modification" of current supreme court precedent).

Further, the Texas Supreme Court in *Gardner v. U.S. Imaging, Inc.*, made note that a claimant can cure an expert report

---

**2.** *Contra Alexander v. Terrell*, No. 09–07–198 CV, 2007 WL 2683536, at *1, *4 (Tex.App.-Beaumont Sept. 13, 2007, no pet.) (mem.op.) (opinion issued prior to the Texas Supreme

Court's decision in *Ogletree*, holding expert report inadequate as to wrongful death claim and dismissing action).

on remand when the trial court found the expert report deficient because it was authored by an unqualified expert. 274 S.W.3d 669, 671 n. 2 (Tex.2008). In *In re Buster,* the Court found that the trial court did not abuse its discretion in granting a thirty-day extension for the claimant to cure its expert report that had been found deficient as to causation because it was written by a nurse. 275 S.W.3d 475, 476–77 (Tex.2008). The Court further held that "a claimant may cure a deficiency by serving a report from a new expert[.]" *Id.* at 477. Moreover, the statute does not prohibit a claimant from changing experts midstream. *Lewis v. Funderburk,* 253 S.W.3d 204, 208 (Tex.2008).

Here, the trial court erroneously found Stinson's expert report sufficient. Had the trial court found Stinson's report insufficient at the initial hearing on the report, Parks was still within the 120–day window provided by the statute and could have timely filed a new expert report that complied with the statute. Parks did not submit further expert reports because the trial court found her report sufficient.

Having concluded Stinson's report was deficient as to the issue of causation and further that Stinson is unqualified to render an opinion on causation, we find the trial court abused its discretion in finding the expert report sufficient, and we remand the cause for the trial court to consider whether to grant Parks a thirty-day extension to cure such deficiencies.

REVERSED AND REMANDED.