02-12-328-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00328-CV

 

 


 
 
 Laron
 Meadows
  
  
 v.
  
  
 Tarrant
 County Hospital District d/b/a JPS Health Network
 
 
 §
  
 §
  
 §
  
 §
  
  
 
 
 From the 48th District Court
  
 of
 Tarrant County (48-253361-11)
  
 February
 21, 2013
  
 Per
 Curiam
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

          It
is further ordered that Appellant Laron Meadows shall pay all of the costs of
this appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

PER
CURIAM

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00328-CV

 

 


 
 
 LARON Meadows
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Tarrant County Hospital District d/b/a JPS Health
 Network
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 48th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction and Background Facts

Appellant
Laron Meadows filed suit against Appellee Tarrant County Hospital District
d/b/a JPS Health Network.  Meadows pleaded causes of action against JPS for
vicarious liability based on the alleged medical negligence of Donald S.
Stewart, M.D. and Neil Dilip Shah, M.D. and for vicarious liability based on
Dr. Stewart’s and Dr. Shah’s alleged failure to disclose to Meadows the risks
of the surgical procedure performed on him.  Meadows served JPS with the expert
reports of Curtis Bagett; John C. Shershow, M.D.; and Maasi J. Smith, D.P.M. 
JPS filed objections to each report and a motion to dismiss Meadows’s claims. 
After a hearing, the trial court sustained all of JPS’s objections to the reports
and dismissed with prejudice both of Meadows’s claims against JPS.  Meadows
perfected this appeal.  In three points, Meadows argues that the trial court
erred by finding Baggett’s report to be inadequate, by dismissing Meadows’s
claim for failure to disclose the risks of the procedure, and by finding that Dr.
Shershow’s and Dr. Smith’s reports were inadequate.  We will affirm.

II.  The Law Concerning Expert Reports in Health Care
Liability Claims

When
a party asserts a health care liability claim, the party must serve an expert report on each defendant within 120 days of
filing the lawsuit.  Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(a) (West 2011). The expert report must provide a fair
summary of the expert’s opinions regarding applicable standards of care, the
manner in which the care rendered failed to meet the standard, and the causal
connection between that failure and the injury that occurred.  Id. § 74.351(r)(6).  If
a plaintiff serves an expert report that is deficient, the trial court has two
options:  (1) dismiss the case with prejudice and award attorney’s fees and
costs of court to the health care provider or (2) grant one thirty-day
extension to allow the plaintiff to cure the deficiencies.  Id. § 74.351(b), (c); see Foster v. Zavala, 214
S.W.3d 106, 116 (Tex. App.—Eastland 2006, pet. denied).  If the deficiencies
can be cured within the thirty-day period, the trial court must grant the
plaintiff an extension if one was requested.  Scoresby v. Santillan, 346
S.W.3d 546, 554 (Tex. 2011).  However, absent a request for an extension, a
court shall grant a motion challenging the adequacy of an expert report “if it
appears to the court, after hearing, that the report does not represent an
objective good faith effort to comply with the definition of an expert report
in Subsection (r)(6).”  See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l). 

When
making the determination as to whether the health care liability plaintiff’s
expert report represents a good-faith effort to comply with the statute, the
trial court is limited to the information found within the four corners of the
expert report and curriculum vitae.  Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 878 (Tex. 2001).  In setting out the expert’s opinions on each of
the required statutory elements, the report, to qualify as a good-faith effort
to comply with the statute, must only provide enough information to fulfill two
purposes:  (1) the report must inform the defendants of the specific conduct
the plaintiff has called into question; and (2) the report must provide a basis
for the trial court to conclude the claims have merit.  Scoresby, 346
S.W.3d at 556.  No particular words or formality are required, but bare
conclusions will not suffice.  Id.
 The report must address all of the statutory elements, and omissions cannot be
supplied by inference.  Id.

We
review a trial court’s ruling on a motion to dismiss under section 74.351 for
an abuse of discretion.  See
Palacios, 46 S.W.3d at 877–78.  When the issue is
whether the plaintiff’s claim is a health care liability claim that is governed
by chapter 74 of the civil practice and remedies code, an interpretation of the
statute is required, and we apply a de novo standard of review.  Buck v. Blum, 130
S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.); Ponce v. El Paso Healthcare Sys., Ltd., 55
S.W.3d 34, 36 (Tex. App.—El Paso 2001, pet. denied).

III.  Reports Concerning Failure-to-Disclose Claim

In
his first point, Meadows argues that the trial court erred by finding the
report of Curtis Bagett to be inadequate because it “was an entirely different
kind of report than the type of reports to which [civil practice and remedies
code section 74.351(r)(6)] is concerned.”  Meadows argues that Bagett’s report
was pertinent to his claim under section 74.101 asserting JPS’s vicarious
liability for Dr. Stewart’s and Dr. Shah’s failure to disclose the risks of the
surgical procedure to him.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.101 (West 2011).  Bagett is an expert document examiner, and his report set
forth his opinion that Meadows’s signature on the “Disclosure and Consent
Orthopedic Procedures” form was a forgery.  In his second point, Meadows again
contends that an expert report is not required in a failure-to-disclose claim
or that, alternatively, the Bagett, Shershow, and Smith reports combined
“address the question of causation adequately for a failure to warn case.” 

          Section
74.101 provides:

          In a suit
against a physician or health care provider involving a health care
liability claim that is based on the failure of the physician or health
care provider to disclose or adequately disclose the risks and hazards
involved in the medical care or surgical procedure rendered by the physician or
health care provider, the only theory on which recovery may be obtained is that
of negligence in failing to disclose the risks or hazards that could have
influenced a reasonable person in making a decision to give or withhold
consent.

 

Id. (emphasis
added).  Applying a de novo standard of review to Meadows’s contention that
this failure-to-disclose claim is not a health care liability claim, the plain
language of section 74.101 states that a failure-to-disclose claim is a health
care liability claim.  Id. (stating that section 74.101 applies to “a
suit . . . involving a health care liability claim that is based on the
failure . . . to disclose the risks”) (emphasis added); Buck, 130 S.W.3d at 290 (noting
appellate courts apply de novo standard of review to issue of applicability of
chapter 74 to plaintiff’s claim).  We cannot agree with Meadows’s contention
that his failure-to-disclose claim is not a health care liability claim that
requires a section 74.351(r)(6) expert report.

Meadows
also argues that his failure-to-disclose claim––even if it is a health care
liability claim––does not require an expert report from a medical doctor.  JPS
points out that the surgical procedure performed on Meadows, a right ankle
arthrodesis, is not one of the procedures for which the Texas Medical Disclosure
Panel has generated a list of risks to be disclosed.  If medical care or a
surgical procedure is rendered for which the panel has made no determination,
expert testimony is required to prove that the condition complained of is a
risk inherent in the medical procedure performed and that the risk is material
in the sense that it could influence a reasonable person’s decision to consent
to the procedure.  Sci. Image Ctr. Mgt., Inc. v. Brewer, 282 S.W.3d 233,
239 (Tex. App.—Dallas 2009, pet. denied) (citing Barclay v. Campbell, 704
S.W.2d 8, 9–10 (Tex. 1986)); see also Greenberg v. Gillen, 257 S.W.3d
281, 282–83 (Tex. App.—Dallas 2008, pet. dism’d) (stating
that a section 74.101-based claim is a health care liability claim for “negligence
in failing to disclose the risks or hazards that could have influenced a
reasonable person in making a decision to give or withhold consent”).  Thus, we
cannot agree with Meadows’s contention that a report from a medical expert was
not required to support his failure-to-disclose claim.

And
an expert report that meets the requirements of section 74.351(r)(6) is
required in all health care liability claims.  Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(a) (setting forth requirement that “in a health care
liability claim” claimant shall serve expert report).  It is undisputed here
that Bagett’s report does not meet the expert report requirements of section
74.351(r)(6).  Likewise, the reports of Dr. Shershow and of Dr. Smith do not
detail the risks or hazards of the surgical procedure performed on Meadows—“right
ankle arthrodesis.”  Nor do the reports state that the failure to disclose any
particular risks or hazards could have influenced a reasonable person in making
a decision to give or withhold consent to the surgical procedure.[2]

Because
Meadows’s failure-to-disclose claim under section 74.101 is a health care
liability claim requiring an expert report meeting the requisites of section
74.351(r)(6), because Bagett’s report does not meet the requisites of section
74.351(r)(6), and because neither Dr. Shershow’s nor Dr. Smith’s reports disclose
any particular risks or hazards in a right ankle arthrodesis that could have
influenced a reasonable person in making a decision to give or withhold consent
to the surgical procedure, we hold that the trial court did not abuse its
discretion by dismissing Meadows’s failure-to-disclose claim.  We overrule Meadows’s
first and second points.

IV. 
John C. Shershow, M.D.’s and Maasi J. Smith, D.P.M.’s Reports Concerning Medical
Negligence Claim

          In
his third point, Meadows argues that Dr. Shershow’s and Dr. Smith’s reports,
when considered together, are either adequate to satisfy section 74.351(r)(6)
or, alternatively, constitute a good faith effort at compliance.  Meadows contends
in his appellate brief that Dr. Shershow’s report established the standard of
care and that Dr. Smith’s report established causation.  Dr. Smith is not a
medical doctor; he is a podiatrist.  As pointed out by JPS, only a
physician––an individual licensed to practice medicine––may opine on causation
in a health care liability claim against a physician or health care provider
like Dr. Shershow, M.D. here.  See id. § 74.403(a) (West 2011)
(providing that “in a suit involving a health care liability claim against a
physician or health care provider, a person may qualify as an expert witness on
the issue of the causal relationship between the alleged departure from
accepted standards of care and the injury, harm, or damages claimed only if
the person is a physician”) (emphasis added); id. § 74.001(a)(23)(A)
(West Supp. 2012) (defining physician as “an individual licensed to practice
medicine”); accord HealthSouth of Houston,
Inc. v. Parks, 329 S.W.3d 885, 889 (Tex. App.—Beaumont 2010, pet. denied)
(explaining that nurse is not statutorily qualified to provide an expert
report
on the issue of causation in a health care liability claim).  Neither
Dr. Smith’s curriculum vitae nor Dr. Smith’s report establish that he is qualified
to offer an expert opinion on causation in this case.[3]
 Because Dr. Smith was not statutorily qualified or proved to be otherwise
qualified to offer expert opinions on causation on Meadows’s medical negligence
claim and because Dr. Shershow did not (as conceded by Meadows) offer opinions
on causation, we hold that the trial court did not abuse its discretion by
dismissing Meadows’s medical negligence claim.

          Finally,
in part of his third point, Meadows contends that the trial court should have granted
him a thirty-day extension to cure the defects in his reports.  But Meadows does
not point to any place in the appellate record where he requested that the
trial court grant him a thirty-day extension; JPS argues that a request for a
thirty-day extension was never made in the trial court.  The clerk’s record
does not contain any motion requesting a thirty-day extension of time to cure
the deficiencies.  See generally Tex. R. App. P. 33.1(a) (providing that
as a prerequisite to appellate review, the record must show that the appellate
complaint was made to the trial court by a timely request or motion).  And after
the trial court sustained JPS’s objections and dismissed Meadows’s claims
against JPS, Meadows did not file a motion to reconsider accompanied by expert
reports that cured the deficiencies.  See Samlowski v. Wooten, 332
S.W.3d 404, 411 (Tex. 2011).  Thus, because Meadows did not request a
thirty-day extension,[4] we cannot hold that the
trial court abused its discretion by not granting one.

          We
overrule Meadows’s third point.

V. 
Conclusion

 

          Having
overruled each of Meadows’s points, we affirm the trial court’s judgment.

 

                                                                             PER
CURIAM

PANEL: 
WALKER, DAUPHINOT, and MEIER, JJ.

 

DELIVERED:  February 21,
2013









[1]See Tex. R. App. P. 47.4.





[2]Dr.
Shershow’s report indicates that the informed consent form purportedly signed
by Meadows discloses only “generic surgical risks, and nothing is written
specific to the risks of the actual planned procedure.”  But Dr. Shershow’s
report nowhere expresses an opinion as to what risks specific to the planned
procedure should have been disclosed or that the failure to disclose any
identified risk could have influenced a reasonable person in making a decision
to give or withhold consent to the surgical procedure.  Dr. Smith’s report does
not address the disclosure of risks of the procedure at all.





[3]We note
that Meadows timely filed Dr. Smith’s first report but did not serve it on
JPS.  Meadows untimely served a second supplemental report of Dr. Smith on
JPS.  Because Dr. Smith was not qualified to offer expert opinions on the issue
of causation, we need not address Meadows’s subarguments within his third point
concerning the adequacy of the merits of Dr. Smith’s report or JPS’s
contentions regarding the untimeliness of both reports by Dr. Smith.  See
Tex. R. App. P. 47.1 (requiring appellate court to address only issues
necessary to final disposition of appeal).





[4]Meadows
did file a motion for new trial.  The motion for new trial did not request a
thirty-day extension; it simply stated as a ground for a new trial that the
trial court “erred in failing to grant one 30 day extension to the claimant in
order to cure the deficiency” in the reports of Bagett, Dr. Shershow, and Dr.
Smith.  Meadows’s motion for new trial was overruled without a hearing, by
operation of law.