

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00328-CV

| | | |
|---|---|---|
| Laron Meadows | § | From the 48th District Court |
| | § | of Tarrant County (48-253361-11) |
| v. | | |
| | § | February 21, 2013 |
| Tarrant County Hospital District d/b/a JPS Health Network | § | Per Curiam |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that Appellant Laron Meadows shall pay all of the costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00328-CV

LARON MEADOWS                                                        APPELLANT

V.

TARRANT COUNTY HOSPITAL                                             APPELLEE
DISTRICT D/B/A JPS HEALTH
NETWORK

----------

## FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION AND BACKGROUND FACTS

Appellant Laron Meadows filed suit against Appellee Tarrant County Hospital District d/b/a JPS Health Network. Meadows pleaded causes of action against JPS for vicarious liability based on the alleged medical negligence of Donald S. Stewart, M.D. and Neil Dilip Shah, M.D. and for vicarious liability

---

[1]See Tex. R. App. P. 47.4.

2

based on Dr. Stewart's and Dr. Shah's alleged failure to disclose to Meadows the risks of the surgical procedure performed on him. Meadows served JPS with the expert reports of Curtis Bagett; John C. Shershow, M.D.; and Maasi J. Smith, D.P.M. JPS filed objections to each report and a motion to dismiss Meadows's claims. After a hearing, the trial court sustained all of JPS's objections to the reports and dismissed with prejudice both of Meadows's claims against JPS. Meadows perfected this appeal. In three points, Meadows argues that the trial court erred by finding Baggett's report to be inadequate, by dismissing Meadows's claim for failure to disclose the risks of the procedure, and by finding that Dr. Shershow's and Dr. Smith's reports were inadequate. We will affirm.

## II. THE LAW CONCERNING EXPERT REPORTS IN HEALTH CARE LIABILITY CLAIMS

When a party asserts a health care liability claim, the party must serve an expert report on each defendant within 120 days of filing the lawsuit. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2011). The expert report must provide a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the care rendered failed to meet the standard, and the causal connection between that failure and the injury that occurred. *Id.* § 74.351(r)(6). If a plaintiff serves an expert report that is deficient, the trial court has two options: (1) dismiss the case with prejudice and award attorney's fees and costs of court to the health care provider or (2) grant one thirty-day extension to allow the plaintiff to cure the deficiencies. *Id.* § 74.351(b), (c); *see Foster v. Zavala*, 214 S.W.3d 106, 116 (Tex. App.—Eastland 2006, pet. denied). If the

3

deficiencies can be cured within the thirty-day period, the trial court must grant the plaintiff an extension if one was requested. *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011). However, absent a request for an extension, a court shall grant a motion challenging the adequacy of an expert report "if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*).

When making the determination as to whether the health care liability plaintiff's expert report represents a good-faith effort to comply with the statute, the trial court is limited to the information found within the four corners of the expert report and curriculum vitae. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). In setting out the expert's opinions on each of the required statutory elements, the report, to qualify as a good-faith effort to comply with the statute, must only provide enough information to fulfill two purposes: (1) the report must inform the defendants of the specific conduct the plaintiff has called into question; and (2) the report must provide a basis for the trial court to conclude the claims have merit. *Scoresby*, 346 S.W.3d at 556. No particular words or formality are required, but bare conclusions will not suffice. *Id.* The report must address all of the statutory elements, and omissions cannot be supplied by inference. *Id.*

We review a trial court's ruling on a motion to dismiss under section 74.351 for an abuse of discretion. *See Palacios*, 46 S.W.3d at 877–78. When the issue

4

is whether the plaintiff's claim is a health care liability claim that is governed by chapter 74 of the civil practice and remedies code, an interpretation of the statute is required, and we apply a de novo standard of review. *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Ponce v. El Paso Healthcare Sys., Ltd.*, 55 S.W.3d 34, 36 (Tex. App.—El Paso 2001, pet. denied).

### III. REPORTS CONCERNING FAILURE-TO-DISCLOSE CLAIM

In his first point, Meadows argues that the trial court erred by finding the report of Curtis Bagett to be inadequate because it "was an entirely different kind of report than the type of reports to which [civil practice and remedies code section 74.351(r)(6)] is concerned." Meadows argues that Bagett's report was pertinent to his claim under section 74.101 asserting JPS's vicarious liability for Dr. Stewart's and Dr. Shah's failure to disclose the risks of the surgical procedure to him. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.101 (West 2011). Bagett is an expert document examiner, and his report set forth his opinion that Meadows's signature on the "Disclosure and Consent Orthopedic Procedures" form was a forgery. In his second point, Meadows again contends that an expert report is not required in a failure-to-disclose claim or that, alternatively, the Bagett, Shershow, and Smith reports combined "address the question of causation adequately for a failure to warn case."

5

Section 74.101 provides:

> In a suit against a physician or health care provider *involving a health care liability claim* that is based on the *failure of the physician or health care provider to disclose* or adequately disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

*Id.* (emphasis added). Applying a de novo standard of review to Meadows's contention that this failure-to-disclose claim is not a health care liability claim, the plain language of section 74.101 states that a failure-to-disclose claim is a health care liability claim. *Id.* (stating that section 74.101 applies to "a suit . . . involving *a health care liability claim* that is based on the failure . . . to disclose the risks") (emphasis added); *Buck,* 130 S.W.3d at 290 (noting appellate courts apply de novo standard of review to issue of applicability of chapter 74 to plaintiff's claim). We cannot agree with Meadows's contention that his failure-to-disclose claim is not a health care liability claim that requires a section 74.351(r)(6) expert report.

Meadows also argues that his failure-to-disclose claim—even if it is a health care liability claim—does not require an expert report from a medical doctor. JPS points out that the surgical procedure performed on Meadows, a right ankle arthrodesis, is not one of the procedures for which the Texas Medical Disclosure Panel has generated a list of risks to be disclosed. If medical care or a surgical procedure is rendered for which the panel has made no determination, expert testimony is required to prove that the condition complained of is a risk

6

inherent in the medical procedure performed and that the risk is material in the sense that it could influence a reasonable person's decision to consent to the procedure. *Sci. Image Ctr. Mgt., Inc. v. Brewer*, 282 S.W.3d 233, 239 (Tex. App.—Dallas 2009, pet. denied) (citing *Barclay v. Campbell*, 704 S.W.2d 8, 9–10 (Tex. 1986)); *see also Greenberg v. Gillen*, 257 S.W.3d 281, 282–83 (Tex. App.—Dallas 2008, pet. dism'd) (stating that a section 74.101-based claim is a health care liability claim for "negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent"). Thus, we cannot agree with Meadows's contention that a report from a medical expert was not required to support his failure-to-disclose claim.

And an expert report that meets the requirements of section 74.351(r)(6) is required in all health care liability claims. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (setting forth requirement that "in a health care liability claim" claimant shall serve expert report). It is undisputed here that Bagett's report does not meet the expert report requirements of section 74.351(r)(6). Likewise, the reports of Dr. Shershow and of Dr. Smith do not detail the risks or hazards of the surgical procedure performed on Meadows—"right ankle arthrodesis." Nor do the reports state that the failure to disclose any particular risks or hazards

7

could have influenced a reasonable person in making a decision to give or withhold consent to the surgical procedure.[2]

Because Meadows's failure-to-disclose claim under section 74.101 is a health care liability claim requiring an expert report meeting the requisites of section 74.351(r)(6), because Bagett's report does not meet the requisites of section 74.351(r)(6), and because neither Dr. Shershow's nor Dr. Smith's reports disclose any particular risks or hazards in a right ankle arthrodesis that could have influenced a reasonable person in making a decision to give or withhold consent to the surgical procedure, we hold that the trial court did not abuse its discretion by dismissing Meadows's failure-to-disclose claim. We overrule Meadows's first and second points.

## IV. JOHN C. SHERSHOW, M.D.'S AND MAASI J. SMITH, D.P.M.'S REPORTS CONCERNING MEDICAL NEGLIGENCE CLAIM

In his third point, Meadows argues that Dr. Shershow's and Dr. Smith's reports, when considered together, are either adequate to satisfy section 74.351(r)(6) or, alternatively, constitute a good faith effort at compliance. Meadows contends in his appellate brief that Dr. Shershow's report established

---

[2]Dr. Shershow's report indicates that the informed consent form purportedly signed by Meadows discloses only "generic surgical risks, and nothing is written specific to the risks of the actual planned procedure." But Dr. Shershow's report nowhere expresses an opinion as to what risks specific to the planned procedure should have been disclosed or that the failure to disclose any identified risk could have influenced a reasonable person in making a decision to give or withhold consent to the surgical procedure. Dr. Smith's report does not address the disclosure of risks of the procedure at all.

8

the standard of care and that Dr. Smith's report established causation. Dr. Smith is not a medical doctor; he is a podiatrist. As pointed out by JPS, only a physician—an individual licensed to practice medicine—may opine on causation in a health care liability claim against a physician or health care provider like Dr. Shershow, M.D. here. *See id.* § 74.403(a) (West 2011) (providing that "in a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed *only if the person is a physician*") (emphasis added); *id.* § 74.001(a)(23)(A) (West Supp. 2012) (defining physician as "an individual licensed to practice medicine"); *accord HealthSouth of Houston, Inc. v. Parks*, 329 S.W.3d 885, 889 (Tex. App.—Beaumont 2010, pet. denied) (explaining that nurse is not statutorily qualified to provide an expert report on the issue of causation in a health care liability claim). Neither Dr. Smith's curriculum vitae nor Dr. Smith's report establish that he is qualified to offer an expert opinion on causation in this case.[3] Because Dr. Smith was not statutorily qualified or proved to be otherwise qualified to offer expert opinions on causation on Meadows's

---

[3]We note that Meadows timely filed Dr. Smith's first report but did not serve it on JPS. Meadows untimely served a second supplemental report of Dr. Smith on JPS. Because Dr. Smith was not qualified to offer expert opinions on the issue of causation, we need not address Meadows's subarguments within his third point concerning the adequacy of the merits of Dr. Smith's report or JPS's contentions regarding the untimeliness of both reports by Dr. Smith. *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary to final disposition of appeal).

medical negligence claim and because Dr. Shershow did not (as conceded by Meadows) offer opinions on causation, we hold that the trial court did not abuse its discretion by dismissing Meadows's medical negligence claim.

Finally, in part of his third point, Meadows contends that the trial court should have granted him a thirty-day extension to cure the defects in his reports. But Meadows does not point to any place in the appellate record where he requested that the trial court grant him a thirty-day extension; JPS argues that a request for a thirty-day extension was never made in the trial court. The clerk's record does not contain any motion requesting a thirty-day extension of time to cure the deficiencies. *See generally* Tex. R. App. P. 33.1(a) (providing that as a prerequisite to appellate review, the record must show that the appellate complaint was made to the trial court by a timely request or motion). And after the trial court sustained JPS's objections and dismissed Meadows's claims against JPS, Meadows did not file a motion to reconsider accompanied by expert reports that cured the deficiencies. *See Samlowski v. Wooten*, 332 S.W.3d 404, 411 (Tex. 2011). Thus, because Meadows did not request a thirty-day extension,[4] we cannot hold that the trial court abused its discretion by not granting one.

---

[4]Meadows did file a motion for new trial. The motion for new trial did not request a thirty-day extension; it simply stated as a ground for a new trial that the trial court "erred in failing to grant one 30 day extension to the claimant in order to cure the deficiency" in the reports of Bagett, Dr. Shershow, and Dr. Smith. Meadows's motion for new trial was overruled without a hearing, by operation of law.

We overrule Meadows's third point.

## V. Conclusion

Having overruled each of Meadows's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  WALKER, DAUPHINOT,  and MEIER, JJ.

DELIVERED:  February 21, 2013